UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------
FREDERICK H. WEBER,

                                    Petitioner,          9:09-CV-174 (Lead Case)
                                                         9:09-CV-221
                     vs.                                 (FJS)(ATB)

WILLIAM HAGGETT, Superintendent,

                                    Respondent.
------------------------------------------------------------------
FREDERICK H. WEBER, Petitioner, *pro se*
THOMAS B. LITSKY, Ass't Attorney General, for Respondent

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

        These matters were referred for Report and Recommendation by the Honorable

Frederick J. Scullin, Senior United States District Judge, pursuant to 28 U.S.C. §

636(b) and Local Rules N.D.N.Y. 72.3(c).  The cases were re-assigned to me on

January 4, 2010, following the retirement of Magistrate Judge Gustave J. Di Bianco.

        Petitioner brings these actions challenging two separate  judgments of

conviction from Rensselaer County Court, both following jury trials.  On July 2, 2002,

petitioner was convicted of one count each of Sexual Abuse in the First Degree,

Course of Sexual Conduct against a Child in the Second Degree, and Endangering the

Welfare of a Child.  The County Court sentenced petitioner to consecutive

indeterminate prison terms of three and one-half to seven years for his two felony

convictions, to be served concurrently with a determinate prison term of one-year for

endangering the welfare of a child.  On October 3, 2002, petitioner was convicted of

ten counts of Sexual Abuse in the Second Degree and five counts of Endangering the Welfare of a Child–all misdemeanors.  The County Court sentenced petitioner to fifteen consecutive one-year jail terms.[1]  Petitioner is currently incarcerated at the Mohawk Correctional Facility pursuant to these judgments of conviction.

The petition in 09-CV-174, dated February 10, 2009, challenged the convictions from petitioner's first trial on five separate grounds.  (Pet. ¶ 12 , 09-CV-174 Dkt. No. 1).  Petitioner challenged the convictions from his second trial on six grounds in a petition dated February 17, 2009, and docketed under 09-CV-221.  (Pet. ¶ 12 , 09-CV-221 Dkt. No. 1).  The two cases were consolidated on February 24, 2009.  (09-CV-174 Dkt. No. 3).[2]  A cover letter for the second petition requested an amendment to make one correction in the first petition.  (Dkt. No. 4).  Magistrate Judge Di Bianco ordered this letter to be filed as an affidavit and allowed the amendment.  (Dkt. No. 3).  Petitioner submitted another letter dated March 3, 2009, which was also docketed as a supporting affidavit.  (Dkt. No. 5).[3]

Respondent filed an answer (Dkt. No. 14), a memorandum of law (Dkt. No. 15),

---

[1] By operation of New York law, petitioner's definite sentences on the convictions from the second trial merged with, and will be satisfied by, his service of the indeterminate sentences imposed as a result of the felony convictions from his first trial.  *People v. Weber*, 40 A.D.3d 1267, 1268-1269, 836 N.Y.S.2d 327 (3d Dep't 2007).

[2] Unless otherwise specified, docket numbers cited hereinafter are from the lead case, No. 09-CV-174.

[3] The letter suggested that it was adding another "ground" for challenging the conviction in the second trial, although there was no request in this letter to amend the petition.  The respondent did not address the additional issue.  As discussed below, the claim was not exhausted in state court and would be procedurally barred, and, in any event, is not cognizable for habeas relief.

and the pertinent state court records, which were sealed to protect the identity of minor victims.  For the reasons set forth below, this court will recommend denial of all claims raised in both petitions.

I.    **Relevant Facts and Procedural History**

A.    **The Arrest and Indictment**s

Between the summer of 1996 and August 2000, petitioner had sexual contact with numerous young girls, mostly in and around the swimming pool and hot tub at his home in the Town of Nassau, Rensselaer County.  Following a complaint by the mother of one of the victims and an investigation by the New York State Police, petitioner was arrested on December 21, 2000.  Thereafter, a Rensselaer County Grand Jury charged petitioner with 14 counts of Sexual Abuse in the First Degree (N.Y. PENAL LAW § 130.65(3)); five counts of Course of Sexual Conduct Against a Child in the Second Degree (N.Y. PENAL LAW § 130.80); eight counts of Endangering the Welfare of a Child (N.Y. PENAL LAW § 260.10(1); and ten counts of Sexual Abuse in the Second Degree (N.Y. PENAL LAW § 130.60(2).  (Indictment No. 01-1015, Ex. HH).[4]

County Court Judge McGrath dismissed ten counts of first-degree sexual abuse as duplicitous based upon the victims' grand jury testimony, and severed nine misdemeanor counts of second-degree sexual abuse and seven counts of endangering the welfare of a child.  (11/7/01 Decision and Order, Ex. II).  Supreme Court Justice

---

[4] Citations to the sealed state-court record, other than the trial transcripts, will refer to the exhibit letters assigned by the respondent.

Teresi later severed two other sexual abuse counts.  *People v. Weber*, 25 A.D.3d 919, 920 & n.*, 807 N.Y.S.2d 222 (3d Dep't 2006).  With leave of the County Court, the District Attorney re-presented evidence respecting the ten charges that had been dismissed, and a Rensselaer Grand Jury charged petitioner with one count of Sexual Abuse in the First Degree, two counts of Course of Sexual Conduct Against a Child in the Second Degree, and one count of Sexual Abuse in the First Degree.  (Indictment No. 01-1125, Ex. JJ).  Those four counts were consolidated with the remaining nine counts in Indictment No. 01-1015, that had not been severed.

On May 6, 2002, petitioner proceeded to a jury trial before Supreme Court Justice Teresi on the following consolidated charges involving three minor victims–four counts of first degree sexual abuse; one count of second-degree sexual abuse; seven counts of second-degree course of sexual conduct against a child; and one count of endangering the welfare of a child.  On September 3, 2002, petitioner proceeded to a jury trial before Judge McGrath on the 16 misdemeanor charges (involving nine minor victims) that had been severed.

### B.    The First Trial and Direct Appeal

#### 1.    The People's Case

MED,[5] who was 14 years old at the time of the trial, had been friendly with petitioner's daughter, SW.  (Trial Transcript, T1 at 399, 411).[6]  Starting in the summer

---

[5] The court will use initials to protect the identity of minor victims and witnesses.

[6] Citations to the trial transcript relating to the first trial will be referenced with the prefix "T1."  Citations to the transcript of the second trial will be referenced with "T2."

4

of 1996, after MED had completed second grade, she was at petitioner's home in Rensselaer County "a lot." (T1 at 402, 411). While they were in his swimming pool in the summer of 1996, petitioner slipped his hand under MED's swim suit and touched her vagina. (T1 at 413-14). In September 1996, while in his hot tub, petitioner positioned MED over the water jets to inflate her swim suit with air bubbles, and then touched MED's vagina. (T1 at 418-20). MED, who was eight years old at the time, really did not know what petitioner was doing, and she did not think it that it was "bad." (T1 at 420). This pattern of touching in the swimming pool and hot tub continued with some regularity over the next several years. (T1 at 435-37, 439-40, 441-42, 450-51).

In the summer of 1998, when MED was ten years old, petitioner touched her vagina "a lot," both in the pool and in his hot tub. (T1 at 442-444). During the school year between September 1999 and May or June 2000, petitioner continued to finger MED's vagina when she was in the hot tub, approximately once per month. (T1 at 444-45). In May or June 2000, petitioner's again touched MED's vagina in the hot tub. (T1 at 461). That same day, MED went for a ride on petitioner's four-wheel all-terrain vehicle. During the ride, petitioner rubbed MED's nipples under her shirt. (T1 at 451-53). Later that day, MED confided in her friend, LB, that petitioner had touched her "private parts," and MED and LB told petitioner's daughter. (T1 at 462, 662). That was the last time that MED went to petitioner's house. (T1 at 462-63).

Two other girls testified at the trial regarding similar, but less frequent instances of inappropriate touching by the petitioner. MED's younger sister, MCD, testified

that, during the summers of 1998 and 1999, when she was eight and nine years old, she frequently swam in petitioner's pool.  (T1 at 534, 541).  Over the course of those two summers, petitioner slipped his hand under MCD's swim suit and touched MCD's buttocks approximately ten times.  (T1 at 536-539, 544-546).

Another friend of petitioner's daughter, KR, testified that she visited petitioner's house during the summer of 1996, after she had completed second grade.  (T1 at 576-77).  In both petitioner's hot tub and pool, petitioner touched KR's vagina under her bathing suit.  (T1 at 580-81, 584).  When petitioner touched KR, he made "grunting noises."  (T1 at 607).  KR testified that, as she got older, she realized that petitioner's touching was wrong; but she was scared to say anything.  (T1 at 584).

In 1999, KR played on a softball team coached by petitioner, and attended a "sliding practice" at petitioner's house.  (T1 at 585-87).  After the girls on the team practiced sliding on wet garbage bags in their swim suits (T1 at 586-87), petitioner lifted KR over the water jets in the hot tub, slipped his hand underneath her swim suit and touched her vagina.  (T1 at 589).  After KR's mother heard a news account of petitioner's arrest in December 2000, she spoke with KR, who admitted that petitioner had touched her vagina.  (T1 at 787).  KR's mother then contacted the police.  (T1 at 788).

Eileen Treacy, Ph. D., a psychology professor at Lehman College (T1 at 893) testified about a commonly-recognized pattern of behavior referred to as child sexual abuse accommodation syndrome.  (T1 at 914).  Dr. Treacy explained that most child victims do not make an immediate disclosure of sexual abuse, but may wait weeks or

6

months, or sometimes until their adulthood, to disclose that they have been abused.
(T1 at 918-19).  The closer the relationship is between the victim and the offender, the
less likely it is that the case gets reported.  (T1 at 919).  The more the child feels guilty
for what has happened, has a fear of hurting the abuser, or apprehension about how
people might react, the less likely it is that the child will come forward.  (T1 at 920).

Dr. Treacy further explained that children may give the benefit of the doubt to
an adult, and believe that they made a mistake and that the abuse did not happen.  (T1
at 923).  She testified that, if the child has positive feelings toward the abuser, the last
thing that the victim wants to see is the person getting into trouble.  (T1 at 925).  Dr.
Treacy further noted that a child will more likely disclose the abuse if the child has a
supportive parent, a good support system, and if the child cognitively begins to be able
to label the behavior as improper and abusive.  (T1 at 924).  In addition, Dr. Treacy
indicated that adolescents frequently confide in a friend, a friend's mother, or a
counselor at school.  (T1 at 926).

## 2.    Petitioner's Case

Petitioner, Frederick Weber, who lived with his wife and their three children,
worked as an Associate Professor at Hudson Valley Community College.  (T1 at 1086,
1089, 1093-94).  He denied sexually touching MED, MCD, or KR.  (T1 at 1618-19).

Petitioner did acknowledge that he assisted various children in inflating their
swim suits in the hot tub, starting at his daughter's 1997 birthday party.  (T1 at 1532).
To assist the children in this activity, petitioner would put one hand under the
children's backs, and one under hand under their knees or thighs, and float them over

7

the hot tub jets until their respective swim suits would "blow up like a big hot air balloon in front of them." (T1 at 1533-34). Petitioner conceded that he played with children while they were in his pool, including MED, MCD, and KR. (T1 at 1541, 1544-45). He acknowledged driving MED on his "quad," but stated that this happened in February 2000. (T1 at 1582).

Sandra Weber, petitioner's wife of twenty-two years, never saw petitioner touch any girl improperly. (T1 at 1404). JM, a tenth grader, who lives across the street from petitioner, never saw petitioner touch any girl in a "bad" place. (T1 at 1426, 1430). Timothy M. Edwards, petitioner's brother-in-law, would go to petitioner's house three to four times each summer with his family, and Edwards never saw petitioner improperly touch any child in the hot tub. (T1 at 1325).

Petitioner's daughter, SW, who was thirteen years told at the time of the trial, testified that she was interviewed on December 21, 2000 at her school by Investigator Zwingelberg, in the presence of a social worker and her principal. (T1 at 1267-68). According to SW, during the course of the interview, Inv. Zwingelberg told her that petitioner admitted to touching her, and accused SW of lying when she did not admit abuse. (T1 at 1270).

Phillip W. Esplin, a Forensic Psychologist, testified that child sexual abuse accommodation syndrome "was intended to help understand how a child that you knew had been victimized had put up with that and dealt with it and went on with their life." (T1 at 1468). According to Dr. Esplin, the syndrome had no value in determining whether or not the abuse occurred (T1 at 1467), and it was not meant to

be diagnostic tool.  (T1 at 1486).  He agreed that child sexual abuse has been

under-reported historically (T1 at 1490-91), and that sometimes children do not tell

about abuse because they are embarrassed or concerned about what might happen if

they tell.  (T1 at 1487, 1488).  Dr. Esplin acknowledged that children who have been

abused by someone they like may have conflicting feelings toward the abuser.  (T1 at

1493).  He further agreed that it was "not uncommon" for teenagers to disclose abuse

to friends.  (T1 at 1495).  And, Dr. Esplin acknowledged that the level of a victim's

support from a non-offending parent would be extremely important in the child's

decision whether or not to disclose abuse.  (T1 at 1495-96).

### 3.     The Verdict and Sentencing

After approximately 25 hours of deliberations over two days (T1 at 1880, 1896,

1897, 1916), the jury found petitioner guilty of one count each of Sexual Abuse in the

First Degree, Course of Sexual Conduct against a Child in the Second Degree, and

Endangering the Welfare of a Child, all relating to victim MED.  The jury acquitted

the petitioner of ten other charges involving all three victims.  On July 2, 2002, the

County Court sentenced petitioner to consecutive, indeterminate prison terms of three

and one-half to seven years for his convictions for first-degree sexual abuse and

second-degree course of sexual conduct against a child, to be served concurrently with

a determinate prison term of one-year for endangering the welfare of a child.  *People

v. Weber*, 25 A.D.3d at 920.

### 4.     Petitioner's Direct Appeal

Petitioner's appellate attorney filed a brief on petitioner's behalf from the

9

judgment of conviction in the first trial, arguing that: (1) petitioner's conviction for Course of Sexual Conduct against a Child in the Second Degree was legally insufficient and against the weight of credible evidence; (2) the count charging Sexual Abuse in the First Degree, occurring "on or about the [s]ummer of 1996," was duplicitous; (3) the time frames contained in the three counts of which petitioner was convicted were insufficient, overly broad and violative of N.Y. CRIM. PROC. LAW § 200.50 (6); (4) the County Court erred in permitting the People's expert to testify regarding child sexual abuse accommodation syndrome; (5) the County Court abused its discretion in denying petitioner's omnibus motion for a taint hearing based on petitioner's suggestion that the children made their accusations against petitioner as result of coercion or undue suggestion by the state police; (6) the County Court abused its discretion in denying petitioner's request to introduce expert testimony to explore the suggestibility of children during police interrogations; (7) the People engaged in prosecutorial misconduct by repeatedly questioning various witnesses regarding other children, to raise the specter that petitioner had abused other victims, and by eliciting irrelevant and prejudicial testimony; and (8) the County Court overemphasized the need of jurors to compromise, and failed to stress the obligation of jurors to adhere to their conscientious convictions.  (Ex. KK).  The People filed a responsive brief (Exhibit LL) and petitioner filed a reply (Ex. MM).

By Memorandum and Order dated January 19, 2006, the Appellate Division, Third Department, unanimously affirmed petitioner's judgment of conviction.  *People v. Weber*, 25 A.D.3d 919, 807 N.Y.S.2d 222 (3d Dep't 2006) (Ex. H).  The Appellate

Division found that petitioner's conviction of Course of Sexual Conduct Against a Child in the Second Degree (relating to victim, MED), was not contrary to the weight of credible evidence.  *Id*., 25 A.D.3d at 920-21.  To the extent that petitioner raised a sufficiency of the evidence claim concerning the proof on that charge, the court found that the claim was not preserved for appellate review under N.Y. CRIM. PROC. LAW § 470.15, and was, in any event, without merit. *Id*. at 921.

Next, the Appellate Division found that petitioner failed to preserve his contention that the count charging Sexual Abuse in the First Degree was duplicitous under N.Y. CRIM. PROC. LAW  § 200.30, either by moving to dismiss that charge before trial, or at the time of the victim's trial testimony.  *Id*. at 922.  In any event, the Appellate Division found that the applicable count charged a single act of sexual abuse during the summer of 1996, and the victim's trial testimony regarding that summer did **not** make it "virtually impossible to determine the particular act of . . . sexual abuse as to which the jury reached a unanimous verdict."  *Id*. (citation omitted). The Appellate Division also rejected petitioner's claim that the time frames contained in the three counts of which petitioner was convicted were insufficient and overly broad, in violation of N.Y. CRIM. PROC. LAW § 200.50(6).  *Id*. at 922-923.

The Appellate Division found no error in the County Court's decision to permit the People's expert to testify regarding child sexual abuse accommodation syndrome. The Appellate Division found that "[t]he expert's testimony remained generalized and stayed within permissible bounds . . . ."  *Id*. at 923.  Furthermore, the Appellate Division found that petitioner was permitted to "exhaustively cross-examine" this

witness and "to submit the testimony of a defense expert who called into doubt much of her testimony." *Id*. at 923.

The Appellate Division perceived no abuse of discretion in the trial court's denial of petitioner's motion for a taint hearing regarding the testimony of the minor victims and petitioner's offer of expert testimony to explore the suggestibility of children during police interrogations. *Id*. The court found that petitioner's attempt to establish that this issue was beyond the knowledge of jurors or that these victims had been subjected to undue suggestion or coercion "was speculative." *Id*. The court further noted that petitioner had a full opportunity to address the allegation of suggestibility during the examinations of the victims, petitioner's children, and the police investigators. *Id.*

The Appellate Division also rejected petitioner's claim that the People engaged in prosecutorial misconduct by questioning various witnesses regarding other children to raise the specter that petitioner abused others. The court found that any references to other alleged victims, "were brief and general and were not so prejudicial as to constitute prosecutorial misconduct or to deprive defendant of a fair trial." *Id*. at 925. Finally, the Appellate Division considered petitioner's remaining contentions and found that they lacked merit. *Id.*

By letter dated February 3, 2006, petitioner sought leave to appeal to the New York Court of Appeals, raising all of the grounds asserted in petitioner's direct appeal. (Ex. I). On March 22, 2006, the New York Court of Appeals denied petitioner leave to appeal. *People v. Weber*, 6 N.Y.3d 839, 814 N.Y.S.2d 88 (N.Y. 2006) (table).

### C.     The Second Trial and Direct Appeal

### 1.     The People's Case

At petitioner's second trial, the People presented the testimony of nine young

girls who "mainly alleged that defendant touched their buttocks or vaginas while they

were in his pool or hot tub" at various times in 1999 and 2000.  *People v. Weber*, 40

A.D.3d 1267, 836 N.Y.S.2d 327 (3d Dep't 2007).  The victims were neighbors, friends

of petitioner's children, and/or members of girls' athletic teams he coached, and they

ranged in age from eleven to sixteen at the time of the alleged abuse.[7]  Many of the

children described their emotional response to petitioner's touching, which included

disgust, discomfort, embarrassment, and fear.  Several of the children tried to explain

why they did not confront petitioner about the touching or promptly report it to

parents or others.[8]  On December 18, 2000, the mother of one of the victims called the

police, which triggered an investigation by the New York State Police and led to

petitioner's arrest a few days later.  (T2 at 469-470, 478, 522, 527, 537).[9]

Dr. Treacy appeared for the People, as she did at petitioner's first trial.  She

provided testimony about child sexual abuse accommodation syndrome and related

issues that was similar to that offered at the first trial, as summarized above.  (T2 at

---

[7] The charges in the second trial involved different minor victims than those relating to the first trial, but some witnesses testified in both trials.

[8] Respondent's Memorandum of Law, at pages 13-16, provides a summary of the testimony of individual victim/witnesses, with citations to the trial record.  (Dkt. No. 15).

[9] The page references to the transcript of the second trial are the consecutive numbers printed in the lower right hand corner of each page, all of which are preceded in the transcript by the prefix "T2:".

1653-1767).

###    2.    Petitioner's Case

Petitioner's wife, his teenage daughter, and his sister-in-law all testified about how the petitioner would hold girls near the water jets in the hot tub to inflate their swim suits for "fun."  (T2 at 1898-99, 1902-1905).  Petitioner's daughter described the sensation of having her swim suit filled with air bubbles in the hot tub as "weird," as if someone is "tapping you" on your bottom and pelvic area (T2 at 2088-89), and "moving around in your swim suit" (T2 at 2244).  Petitioner's wife and sister-in-law testified that when the bubbles from the hot tub entered ones swim suits, it was like "someone" was "touching" you in the crotch area.  (T2 at 1901-02, 2437-2438).

Petitioner Frederick Weber acknowledged that he played with girls in his pool (T2 at 2616-22) and inflated the swim suits of some of the alleged victims (T2 at 2629-30, 2638-41, 2654-58, 2665, 2717).  He repeatedly denied touching any of the girls' vaginas or private parts.  (T2 at 2622, 2799, 2880).

Petitioner explained numerous specific incidents of alleged touching raised during the People's case.  For example, in response to testimony from AJ about petitioner massaging her stomach and legs (T2 at 1394-96), petitioner testified that, during softball "sliding practice" at his home, she did not have full range of motion in her legs and complained about her stomach after doing sit- ups.  Petitioner got into the hot tub with AJ and "checked out [AJ's] calves and the front of her thighs and her stomach" by pinching the muscles.  He also touched AJ's stomach and showed her what stomach muscles to rub.  (T2 at 2706-09).

### 3.   The Verdict and Sentencing

On September 20, 2002, the jury found petitioner guilty of ten counts of Sexual

Abuse in the Second Degree and five counts of Endangering the Welfare of a Child,

and not guilty on two misdemeanor counts.  *People v. Weber*, 40 A.D.3d at 1267.  On

October 3, 2002, the County Court sentenced petitioner to fifteen consecutive

one-year jail terms.  *Id.*

### 4.   Petitioner's Direct Appeal

Appellate counsel filed a brief challenging the petitioner's judgments of

conviction from the second trial, arguing that: (1) the County Court erred in not

admitting petitioner's polygraph results; (2) the County Court erred in its *Sandoval*[10]

ruling; (3) petitioner's convictions were not supported by legally sufficient evidence

and were against the weight of the evidence; (4) the County Court erred in not

granting petitioner's motion for a mistrial due to prosecutorial misconduct; and (5) the

County Court imposed an excessive sentence.  (Ex. A).  The District Attorney filed a

brief in opposition (Ex. C), with a supporting Appendix (Ex. B).

By Memorandum and Order dated May 17, 2007, the Appellate Division, Third

Department, unanimously affirmed petitioner's judgment of conviction.  *People v.

Weber*, 40 A.D.3d 1267, 836 N.Y.S.2d 327 (3d Dep't 2007) (Ex. D).  The Appellate

Division found that the County Court correctly refused petitioner's request, without

holding a hearing, to admit the results of his polygraph examination into evidence.

---

[10] Pursuant to *Sandoval*, the court determines the admissibility of prior crimes for impeachment purposes, should the defendant take the stand.  *People v. Sandoval*, 34 N.Y.2d 371, 357 N.Y.S.2d 849 (N.Y. 1974).

*Id.*, 40 A.D.3d at 1267.  The Appellate Division further found that the County Court did not err in reaching a *Sandoval* compromise, "permitting [petitioner] to be cross-examined about the existence of his prior felony conviction, without disclosing the nature of the conviction, the underlying facts or the exact sentence imposed."  *Id.* at 1267-68.

The Appellate Division rejected petitioner's contention that the evidence was legally insufficient, and the verdict was against the weight of the evidence. *Id.* at 1268. Next, the Appellate Division found that the County Court did not err in denying petitioner's motion for a mistrial following the People's summation. Although the Appellate Division found that some of the prosecutor's comments were improper, the court found that the County Court "sustained several of [petitioner's] objections and other objections were properly overruled because the prosecutor's comments interpreted record evidence or responded to the defenses raised." *Id*.  Finally, the Appellate Division found that petitioner's excessive sentence claim to be "academic" because, by operation of law, petitioner's definite sentence relating to the second trial merged with, and were satisfied by, his service of indeterminate sentences imposed after his first trial. *Id*. at 1268-69.

By letter dated May 30, 2007, petitioner sought leave to appeal to the New York Court of Appeals.  (Ex. E).  On September 7, 2007, a judge from the New York Court of Appeals denied petitioner leave to appeal.  *People v. Weber*, 9 N.Y.3d 927, 844 N.Y.S.2d 182 (N.Y. 2007) (Ex. K).

**D.     Petitioner's Motions to Vacate the Judgments**

**1.     First Section 440.10 Motion (Relating to the Second Trial)**

By *pro se* motion dated September 12, 2006 to vacate the judgments of conviction resulting from both of his trials under N.Y. CRIM. PROC. LAW § 440.10, the petitioner claimed that: (1) the People used evidence that was obtained through an unlawfully issued subpoena; (2) the People withheld and *Rosario*[11] and exculpatory *Brady* material; (3) the prosecutor improperly bolstered the People's witnesses by making gestures, not appearing on the record; (4) appellate counsel was ineffective; (5) trial counsel was ineffective; (6) the prosecutors and investigators improperly coerced child victim/witnesses by surreptitiously removing them from school, and conducting initial interviews with the minors, without the knowledge or consent of their parents; and (7) the investigation and prosecution were conducted in an abusive and coercive manner, deliberatively calculated to result in the use of false testimony to unjustly convict petitioner.  (Ex. L).

By Decision and Order dated October 11, 2007 (Ex. Q), County Court Judge McGrath, who presided at petitioner's second trial, denied the section 440.10 motion.[12]  The judge rejected petitioner's claim that the People failed to disclose an

---

[11] Under New York law, a prosecutor must turn over "*Rosario* material"–any "written or recorded statements . . . made by a person whom the prosecutor intends to call as a witness at trial, and which relates to the subject matter of the witness's testimony."  N.Y. CRIM. PROC. LAW § 240.45(1)(a); *People v. Rosario*, 9 N.Y.2d 286, 289, 213 N.Y.S.2d 448 (N.Y. 1961).

[12] With respect to petitioner's claim that the People used evidence obtained through an unlawfully issued subpoena, the court denied the motion under N.Y. CRIM. PROC. LAW § 440.10(2)(c) because sufficient facts appeared on the record to allow petitioner to raise the issue on appeal, which he failed to do.  In any event, the County Court found that the claim was based

un-redacted Child Protective Services ("CPS") report regarding an investigation of allegations that petitioner abused his own children, which were ultimately determined by CPS to be unfounded.  The court found that, by the time of petitioner's second trial, petitioner was aware of the report, and, with due diligence petitioner could have placed facts about the report on the record in a manner providing adequate basis for review on appeal.  The judge noted that, at petitioner's second trial, he ruled that the report was admissible (T2 at 395-97), but petitioner made no attempt to introduce it, nor did he attempt to call the CPS workers as witnesses.  Accordingly, the court denied the claim on procedural grounds, under N.Y. CRIM. PROC. LAW. § 440.10(3)(a), and, in any event, found the claim meritless.[13]   The court noted that the petitioner's children were not alleged to be victims in petitioner's trial.  Defense counsel was able to challenge the credibility of government witnesses by extensively cross-examining the police investigators and questioning petitioner's daughter about the CPS interviews and the underlying allegations.[14]

The court next denied petitioner's claims that petitioner's trial counsel was ineffective, based on conclusory allegations that he failed to preserve issues for

---

on mere speculation and was without merit. The judge denied petitioner's *Brady* claim that the People failed to investigate and disclose possible perjured testimony of certain witnesses, noting the claim related primarily to testimony at petitioner's first jury trial before Supreme Court Justice Teresi, over which Judge McGrath lacked jurisdiction.

[13]   Judge McGrath found that he could not address the *Brady* claim involving the CPS report to the extent that it related to petitioner's first jury trial before Justice Teresi.

[14] The County Court also rejected petitioner's *Rosario* and other claims regarding an alleged tape recording of petitioner made by a police Investigator, given, *inter alia*, that there was no evidence suggesting that such a recording existed.

appellate review and did not adequately confront the People's witnesses.  The County Court held that this claim was barred under N.Y. CRIM. PROC. LAW. § 440.10(2)(c) because petitioner could have raised it on direct appeal, but failed to do so.  In any event, the court, in the alternative, rejected petitioner's allegations on the merits, finding that trial counsel was a vigorous and competent advocate.

By motion dated October 23, 2007, petitioner, sought to appeal the denial of his motion to vacate the judgment to the Appellate Division, Third Department.  (Ex. R). By Order dated December 31, 2007, the Appellate Division denied petitioner leave to appeal.  (Ex. T).  Petitioner also sought leave to appeal to the New York Court of Appeals (Ex. U), which was denied on April 1, 2008.  (Ex. V).

### 2.    Second Section 440.10 Motion (Relating to the First Trial)

Petitioner filed a second *pro se* section 440.10 motion, dated January 16, 2008, to vacate the judgments of conviction, in the Rensselaer County Court.  (Ex. W).  In an apparent effort to bring his claims before the judge who presided at his first trial, petitioner largely repeated the allegations from his first motion.  The District Attorney opposed the motion (Ex. Y), and petitioner filed a lengthy reply (Ex. Z).

By Decision and Order dated April 18, 2008, Justice Teresi denied petitioner's motion, as it related to the first jury trial.  (Ex. AA).  The court found that petitioner failed to establish that the CPS report was exculpatory, that he suffered actual prejudice from its non-disclosure, or that the result of the first trial would have been different had the report been disclosed.  The court further found that the report had "no bearing" on petitioner's guilt or innocence and was unrelated to the charges on

which petitioner was convicted, which involved victims other than his own children. In any event, the petitioner was aware of the evidence and received a ruling from the court that it was not admissible.

Next, the court found that petitioner failed to set forth any proof, other than conclusory allegations, that the People improperly bolstered witness testimony, improperly coerced witnesses, or conducted its investigation in an abusive or coercive manner. The court further found that petitioner failed establish that trial counsel was constitutionally ineffective. The court rejected petitioner's other claims with little or no discussion.[15]

Petitioner sought leave to appeal to the Appellate Division, Third Department. (Ex. BB). By order dated August 4, 2008, the Appellate Division denied petitioner leave to appeal. (Ex. EE). Petitioner also sought leave to appeal to the New York Court of Appeals (Ex. FF), which was denied on September 25, 2008 (Ex. GG).

### E.    The Habeas Petitions

#### 1.    09-CV-174 (Relating to the First Trial)

Petitioner asserts five grounds for habeas relief with respect to his first trial:

(1)    The trial court deprived him of exculpatory evidence when it denied him access to a complete version of the Child Protective Services ("CPS") Report, which determined that allegations that petition abused his own children were unfounded.

(2)    The trial court denied petitioner's right to present witnesses in his defense

---

[15] Both Judge McGrath (Ex. Q) and Justice Teresi (Ex. AA) ruled that petitioner's claim of ineffective assistance of appellate counsel was not properly asserted under N.Y. CRIM. PROC. LAW. § 440.10.

when it excluded certain testimony of an expert witness for the defense.  The court also erred when it denied the request for a hearing to determine whether the testimony of the People's minor victim/witnesses was "tainted" by suggestive and coercive prior interviews by the authorities.

(3)     Petitioner was not given fair notice of the charges against him because the indictment was not specific.

(4)     He was denied the right to a unanimous jury verdict because indictment was "duplicitous, overly broad, and unduly vague . . ."  He further claims that the trial judge improperly pressured the jury into returning a unanimous verdict by keeping them in prolonged deliberations.

(5)     The prosecutor engaged in misconduct, by, *inter alia*, referring to alleged victims who were not subject of the indictment.

### 2.     09-CV-221 (Relating to the Second Trial)

Petitioner raises six grounds for habeas relief arising from his second trial:

(1)     Petitioner asserts that same claim regarding the CPS report that he raised in his first petition.

(2)     The trial court erred when it failed to admit the results of a polygraph test.

(3)     The trial court erred when it allowed the People to impeach him with evidence of petitioner's convictions in the first trial.

(4)     The evidence was not sufficient to support the verdicts.

(5)     The prosecutor engaged in misconduct.

(6)     The sentence of 15 consecutive one-year terms of imprisonment was excessive.[16]

---

[16] As noted above, petitioner also filed a letter dated March 3, 2009 (Dkt. No. 5), which suggests an additional claim, relating to the apparent failure of the court staff to administer an oath to the jurors in the second trial.

**II.    Applicable Law**

**A.    The AEDPA**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that, when a state court has adjudicated the merits of a petitioner's claim, a federal court may grant an application for a writ of habeas corpus only if "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  *See also, e.g.*, *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001); *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008).[17]  Under §2254(d)(1), a state-court decision is contrary to clearly established Supreme Court precedent if its "conclusion on a question of law is 'opposite' to that of the Supreme Court or if the state court decides a case differently than the Supreme Court's decision 'on a set of materially indistinguishable facts.'"  *Id*.  (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)).  A state court decision involves an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal principle, but unreasonably applies or unreasonably refuses to extend that principle to the facts of a particular case.  *See Williams*, 529 U.S. at 413; *Ramdass v.*

---

[17] Prior to the AEDPA, the court was not required to defer to state court determinations on pure questions of law and mixed questions of law and fact.  *Thompson v. Keohane*, 516 U.S. 99, 107-113 (1995).  When presented with these questions, the court was empowered to conduct an independent review of the record.  *Id.*

*Angelone*, 530 U.S. 156, 166 (2000).

Under the AEDPA, a state court's factual findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  If the state court failed to decide a claim "on the merits," the pre-AEDPA standard of review applies, and both questions of law and mixed questions of law and fact are reviewed *de novo*.  *Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001).

### B.    Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, . . . thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation and other citations omitted)); 28 U.S.C. § 2254(b)(1).  The prisoner must "fairly present" his claim in each appropriate state court, including the highest court with powers of discretionary review, thereby alerting that court to the federal nature of the claim.  *Id.*; *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).

### C.    Procedural Bar

A federal judge may not issue a writ of habeas corpus if an adequate and independent state-law ground justifies the prisoner's detention, regardless of the federal claim.  *See Wainwright v. Sykes*, 433 U.S. 72, 81-85 (1977).  A federal habeas court generally will not consider a federal issue in a case if a state court decision "'rests on a state law ground that is independent of the federal question and ***adequate*** to support the judgment.'"  *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007)

23

(quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)) (emphasis added). This rule applies whether the independent state law ground is substantive or procedural. *Id*

There are certain situations in which the state law ground will not be considered "adequate": (1) where failure to consider a prisoner's claims will result in a "fundamental miscarriage of justice," *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); (2) where the state procedural rule was not "'firmly established and regularly followed,'" *Ford v. Georgia*, 498 U.S. 411, 423-424 (1991); *James v. Kentucky*, 466 U.S. 341, 348-349 (1984); and (3) where the prisoner had "cause" for not following the state procedural rule and was "prejudice[d]" by not having done so, *Wainwright v. Sykes*, 433 U.S. at 87. In *Garvey v. Duncan*, the Second Circuit stated that, in certain limited circumstances, even firmly established and regularly followed rules will not prevent federal habeas review if the application of that rule in a particular case would be considered "exorbitant." *Garvey v. Duncan*, 485 F.3d at 713-714 (quoting *Lee v. Kemna*, 534 U.S. at 376).[18] If petitioner has failed to exhaust his state court remedies, but no longer has remedies available in state court, then the claims are "deemed" exhausted, but may also be procedurally barred. *Bossett v. Walker*, 41 F.3d at 828 (citing *Grey v. Hoke*, 933 F.2d 117, 120-121 (2d Cir. 1991)).

---

[18] In determining whether the application of an independent state rule was "exorbitant," the court should consider (1) whether the alleged procedural violation was actually relied upon by the trial court and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state case law required compliance with the rule in the specific circumstances; and (3) whether petitioner had "substantially complied" with the rule given the "realities of trial," and whether demanding perfect compliance with the rule would serve a legitimate governmental interest. Id. at 714 (quoting *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003)). These factors are not all determinative, but are a guide to evaluate the state's interest in a particular rule in the circumstances of a particular case. *Id*. at 714.

A state prisoner who has procedurally defaulted on a federal claim in state court may only obtain federal habeas review of that claim if he can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or if he can show that he is "actually innocent." *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (internal quotation and citations omitted). "Cause" exists if "the prisoner can show that some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice exists if there is a "reasonable probability" that the result of the proceeding would have been different absent the alleged constitutional violation. *Stickler v. Greene*, 527 U.S. 263, 289 (1999).

To demonstrate "actual innocence," a habeas petitioner must show that it is more likely than not that no reasonable juror would have convicted him, but for the alleged constitutional violation. *Murden v. Artuz*, 497 F.3d 178, 194 (2d Cir. 2007), *cert. denied sub nom. Murden v. Ercole*, 552 U.S. 1150 (2008); *Schlup v. Delo*, 513 U.S. 298, 327 (1995).[19] A claim of actual innocence requires petitioner to put forth new, reliable evidence that was not presented at trial. *Cabezudo v. Fischer*, 05-CV-3168, 2009 WL 4723743, at *13 (E.D.N.Y. Dec. 1, 2009) (citing *Lucidore v. N.Y.S. Div. of Parole*, 209 F.3d 107, 114 (2d Cir. 2000)); *Schlup v. Delo*, 513 U.S. at 316, 327-328.

---

[19] "Actual innocence" requires not legal innocence, but factual innocence. *Murden v. Artuz*, 497 F.3d at 194.

**D.      Reaching the Merits of Unexhausted Claims**

The habeas statute provides that a petition may be denied on the merits, notwithstanding the failure to exhaust state court remedies, assuming there is no procedural bar.  28 U.S.C. § 2254(b)(2).  In the absence of specific guidance from the Second Circuit, lower courts in this circuit have applied two standards to determine whether a claim should be dismissed on the merits, notwithstanding the failure to exhaust.  *See Hernandez v. Conway*, 485 F. Supp. 2d 266, 273 n.1 (W.D.N.Y. 2007).  A majority of lower courts use a "patently frivolous" standard, while others use a "non-meritorious" standard, dismissing a claim when it is "perfectly clear that the [petitioner] does not raise even a colorable federal claim."  *Id.* (collecting cases).[20]

## III.   Application

**A.      Claims Relating to the Child Protective Services Report (Both Trials)**

Petitioner alleges that his rights to *Rosario* and exculpatory *Brady* material were violated, in connection with each of his trials, because he was denied access to an un-redacted copy of a CPS report which exonerated him of allegations that he abused his own children.  A *Rosario* claim is not a cognizable basis for habeas relief and petitioner's *Brady* claim relating to his second trial is procedurally barred.  The decision of Justice Teresi that the *Brady* claim relating to the CPS report from the first

---

[20] In finding that a "non-meritorious" standard was more appropriate, one court referenced Justice Steven's concurrence in the Supreme Court decision in *Duncan v. Walker*.  *Basnight v. Keane*, No. 99-CV-5907, 2001 WL 901139, at *5 n. 1 (E.D.N.Y. July 31, 2001).  In Duncan, Justice Stevens stated that "the AEDPA gives a district court the alternative of simply denying a petition containing unexhausted but nonmeritorious claims."  *Duncan v. Walker*, 533 U.S. 167, 183 (2001) (emphasis added).

trial was without merit is not contrary to, or an unreasonable application of, clearly established federal law.

### 1.    Relevant Facts and Procedural History

In December 2000, CPS learned of allegations that petitioner sexually abused his own daughter, SW.  (Ex. Z at A9).  After conducting an investigation, which included interviewing petitioner, his wife, and children, CPS found a lack of "credible evidence" to substantiate the allegations, and determined them to be "unfounded." (Ex. Z at A3, A5).

Before petitioner's first trial, Justice Teresi reviewed a portion of the CPS file previously disclosed to the District Attorney's Office, and determined that three paragraphs should be turned over to the defense as Brady material.  (T1 at 1138).  In the midst of the first trial, petitioner served a subpoena on Rensselaer County Department of Social Services ("DSS") to produce the entire CPS file.  (T1 at 1075-76).  DSS moved to quash the subpoena on the ground that the file was inadmissible under N.Y. SOCIAL SERVICES LAW § 442(5)(v), and that it was sealed by operation of law because the allegation that petitioner abused his child was determined to be unfounded.  (T1 at 1076-78, 1137).  The court reviewed the entire CPS file *in camera* and determined that, other than the three paragraphs that it had previously ordered disclosed, the CPS file was not relevant to the issues in petitioner's case, and the file was not admissible under § 442(5)(v).  Accordingly, the court granted DSS' motion to quash the subpoena.  (T1 at 1138-39).

During the course of the second trial, Judge McGrath, without the benefit of

hearing argument from DSS Counsel, ruled that the CPS report was admissible.  (T2 at 395-97).  Petitioner, however, made no attempt to introduce the report during the second trial, nor did he call the CPS investigators as witnesses.  (Ex. Q).

### 2. *Rosario* **Claim**

To the extent petitioner's claims regarding the CPS report raise alleged violations of his rights to prior witness statements–*Rosario* material–under New York law, he does not assert a cognizable habeas claim.  It is well settled that "[f]ederal habeas corpus relief does not lie for errors of state law."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  Federal courts have "consistently held" that *Rosario* claims are state law matters not subject to habeas review.  *See, e.g.*, *Morrison v. McClellan*, 903 F. Supp. 428, 429 (E.D.N.Y. 1995) (because any error under *Rosario* at trial would be a violation of state law, it is not subject to review under a petition for a writ of habeas corpus); *Bethune v. Superintendent*, 299 F. Supp. 2d 162, 165 (W.D.N.Y. 2004) ("Rosario claim is solely a New York state law right and is not cognizable on habeas review"); *Green v. Artuz*, 990 F. Supp. 267, 274-75 (S.D.N.Y.1998).

### 3.   **Procedural Bar**

In denying petitioner's first N.Y. Crim. Proc. Law. § 440.10 motion, the judge who presided at petitioner's second trial found that petitioner was aware of the existence of the CPS report.  With due diligence, petitioner could have placed on the record sufficient facts to provide an adequate basis for review on appeal of the claim that he was denied access to that report.  The court held that, because petitioner failed to develop this issue at trial, his claim was procedurally barred under N.Y. Crim.

PROC. LAW. § 440.10(3)(a).[21]  (Ex. Q).

Federal courts in the Second Circuit have found that § 440.10(3)(a) is an adequate and independent procedural bar for the purposes of federal habeas review. *See, e.g, Collins v. Superintendent Conway*, 04 Civ. 4672 (RPP), 2006 WL 1114053, at *2-3 (S.D.N.Y. Apr. 26, 2006) (collecting cases).  Similarly, the case law in this circuit establishes that the application of  § 440.10(3)(a) as a procedural bar is not exorbitant under the *Cotto* factors discussed above.  *See, e.g., Ciochenda v. Artus*, No. 06 Civ. 5057, 2008 WL 3823865 at *10 (S.D.N.Y. August 15, 2008) (New York state courts regularly invoke section 440.10(3)(a) in holding that claims are procedurally barred because they were not raised at or before trial) (collecting cases).  Accordingly, the procedural default relied upon by Judge McGrath in denying petitioner's section 440.10 motion (in connection with the second trial) bars any federal habeas review of petitioner's claim relating to the CPS report, unless he can demonstrate cause for the default and prejudice, or establish his actual innocence.  *Coleman*, 501 U.S. at 750.

The petition did not allege cause for any procedural default.[22]  Because the

---

[21] § 440.10(3)(a) states, in pertinent part:

3. . . . the court may deny a motion to vacate a judgment when:
(a) Although facts in support of the ground or issue raised upon the motion could with due diligence by the defendant have readily been made to appear on the record in a manner providing adequate basis for review of such ground or issue upon an appeal from the judgment, the defendant unjustifiably failed to adduce such matter prior to sentence and the ground or issue in question was not subsequently determined upon appeal. . . .

[22] In his section 440.10 motion, petitioner made conclusory allegations that his trial counsel was ineffective for failing to make appropriate objections and arguments below.  (Ex. L ¶ 109).  "Although the petitioner may establish cause by demonstrating the ineffectiveness of his

petitioner has failed to establish cause, this court need not decide whether he suffered actual prejudice.[23]   (However, as both Judge McGrath (Ex. Q) and Justice Teresi (Ex. AA) found, and as discussed below, the CPS report was not exculpatory and the unavailability of the complete report did not prejudice the petitioner.)  Petitioner has not made any demonstration that he is actually innocent such that there would be a fundamental miscarriage of justice.[24]  Therefore, the claims involving the CPS report, as they related to petitioner's second trial, are barred from habeas review.[25]

---

counsel, he must first present the ineffective assistance contention to the state courts following the rules of those courts as an ineffective assistance claim is itself an independent constitutional claim." *Holland v. Irvin*, 45 Fed. Appx. 17, 19-20 (2d Cir. 2002) (citing *Edwards v. Carpenter*, 529 U.S. 446, 451, (2000); *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir.1997)).  Where the facts underlying the defendant's ineffective assistance claim are on the record and defendant has different counsel on appeal, New York courts require the defendant to make his ineffective assistance claim on direct state appeal.  *Id*. at 20.  As Judge McGrath held in denying petitioner's first section 440.10 motion, the conclusory claim of ineffective assistance were procedurally barred under N.Y. Crim. Proc. Law § 440.10(2)(c) because petitioner could have, but failed to raise the claim on direct appeal.  (Ex. Q).  Accordingly, petitioner may not rely on the alleged ineffectiveness of trial counsel as cause for the failure to preserve,  for appeal, the issues relating to the CPS report.  *Holland v. Irvin*, 45 Fed. Appx. at 19-20.

[23] Federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated.  *Murray*, 477 U.S. at 496; *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).

[24] As discussed above, a claim of factual innocence requires petitioner to put forth new, reliable evidence that was not presented at trial.  *Cabezudo v. Fischer*, 2009 WL 4723743, at *13.  In order to be actually innocent, the petitioner must show that "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'"  *House v. Bell*, 547 U.S. 518, 536–37 (2006) (citation omitted).  Petitioner may be suggesting that the full CPS report constitutes new evidence that would establish his factual innocence.  However, as discussed below, the report was not relevant or exculpatory as to any of the charges, and petitioner's counsel had virtually all of the arguably pertinent information from the report available to him at both trials.  Hence, the CPS report was not "new" evidence and it certainly does not establish petitioner's factual innocence.

[25] Both petitions allege that petitioner's right to counsel was violated when he was interviewed, a few days after his arrest, without counsel, by CPS investigators regarding the

### 4.    Review of the Merits

To the extent that the prosecution knows of material evidence favorable to a criminal defendant, it has a due process obligation to disclose that evidence. *See, e.g.*, *Kyles v. Whitley*, 514 U.S. 419, 431 (1995); *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Youngblood v. West Virginia*, 547 U.S. 867, 870 (2006).

Brady material includes not only exculpatory evidence going to the heart of the defendant's guilt or innocence, but also impeachment evidence having the potential to undermine the credibility of a significant prosecution witness. *See, e.g., United States v. Bagley,* 473 U.S. 667, 676-77 (1985); *Giglio v. United States*, 405 U.S. 150, 154-55 (1972). Generally, "impeachment evidence has been found to be material where the witness at issue 'supplied the only evidence linking the defendant(s) to the crime . . . or where the likely impact on the witness's credibility would have undermined a

---

allegations of abuse of his own children. Petitioner claims that the CPS investigators were working closely with the criminal investigators at that time. There is no indication that this issue was ever raised below, and thus it is unexhausted. Petitioner would likely be procedurally barred from seeking to present this issue in state court now, given his apparent failure to move to suppress the statements below or raise the issue on appeal. *See* N.Y. CRIM. PROC. LAW §§ 440.10(2)(c), 440.10(3)(a); *Nelson v. Smith*, 618 F. Supp. 1186, 1195-96 (S.D.N.Y.1985) (failure to move to suppress statements or assert claimed violation of rights for first time on direct appeal constitutes a state procedural default). *Cf. People v. Krivak*, 265 A.D.2d 343, 344, 696 N.Y.S.2d 480 (2d Dep't 1999) (application to suppress statements given to police must be made before trial court or issue not preserved for appellate review) (citing CPL § 470.05(2)). Petitioner has stated no cause for his failure to raise this issue below. In any event, no CPS investigator testified at either trial and petitioner does not claim that evidence relating to his statement (completely denying any abuse of his children) was otherwise introduced. Accordingly, even if his Sixth Amendment rights were infringed in connection with the CPS interview, he has not established any prejudice.

critical element of the prosecution's case." *United States v. Payne*, 63 F.3d 1200, 1210 (2d Cir. 1995) (internal quotation marks and citations omitted).

In denying petitioner's second section 440.10 motion, Justice Teresi found that the CPS report had "no bearing on [petitioner's] guilt or innocence." (Ex. AA). A report concluding that there was a lack of credible evidence establishing that petitioner abused his own children was simply "not material" with respect to the charges that he abused other children. (*Id*.). Justice Teresi's finding that petitioner was not improperly denied any material exculpatory information at the first trial is not contrary to or an unreasonable application of *Brady* or its progeny.

Petitioner also claimed that the complete CPS report would have provided material impeachment information with respect to the law enforcement witnesses or minor victim who "falsely" accused him of abusing his own children. However, it is clear from the record that, even at the time of the first trial, petitioner's counsel was well aware of the CPS report, the fact that the CPS investigation had been initiated based on information from a minor friend of petitioner's daughter (SW) that was passed on to Inv. Jensen the New York State Police, and that CPS found the allegation unfounded, based on an interview of petitioner and all of his family members.[26]

At the first trial, counsel vigorously cross-examined Inv. Jensen about making the "hotline" report of the information that he received, from a friend of SW, that petitioner had abused his own daughters. (T1 at 336-338, 367-368). When the

---

[26] As Justice Teresi held in denying petitioner's section 440.10 motion, the petitioner "was aware that this evidence existed and received a ruling on the evidence at trial." (Ex. AA).

prosecutor attempted to elicit the identity of the friend who passed on the allegation that petitioner abused his daughters, defense counsel successfully objected.  (T1 at 382-83).[27]  During direct examination, SW testified that Inv. Zwingelberg told her that her father had admitted abusing her, which she adamantly denied.  (T1 at 1270).[28]

Notwithstanding the fact that petitioner was not allowed to present evidence about the findings in the CPS report at the first trial (T1 at 337, 368, 1019-20), defense counsel had ample opportunity to attempt to impeach the People's witnesses regarding the allegations that petitioner abused his own children, which SW and other family members firmly denied.[29]  See, e.g., *United States v. Amiel*, 95 F.3d 135, 145 (2d Cir.1996) (cumulative impeachment information is not material).  Justice Teresi's finding that there was no reasonable probability that the result of petitioner's trials would have been different if the entire CPS report had been disclosed was not contrary to or an unreasonable application of *Brady*, *Giglio*, and related Supreme Court authority.  (*Id.*).[30]

---

[27] The CPS report which petitioner received well after the trials, did not identify the source(s) of the information who initiated the investigation.

[28] Inv. Zwingelberg denied telling SW that her father had admitted to touching her improperly.  (T1 at 1021-22).

[29] It is telling that, although Judge McGrath ruled that the results of the CPS report were admissible at the second trial (T2 at 395-97), petitioner's counsel made no effort to introduce the report or call the CPS investigators.  (Ex. Q).

[30] With respect to the second trial, Judge McGrath determined that, were he to reach the merits, petitioner's claims regarding the CPS report were baseless.  (Ex. Q).  For the reasons stated above, this conclusion on the merits was not contrary to or an unreasonable application of the relevant Supreme Court authority.

### B.      Claims Relating to Expert Testimony (First Trial)

Petitioner claims that he was deprived of his constitutional right to present witnesses in his own defense at his first trial,[31] when the court precluded a defense expert from testifying about the susceptibility of juvenile witnesses to suggestive interviewing techniques.  He also asserts that the trial court erred in denying him a pretrial hearing to determine whether the testimony of juvenile witnesses was tainted by coercive government interrogation.  These claims are procedurally barred, non-cognizable for habeas relief, and/or without merit.

### 1.      Relevant Facts and Procedural History

Petitioner's omnibus motions requested a pretrial "taint hearing."  Judge McGrath denied that request, finding that the question of whether suggestive interview techniques tainted the testimony of minor witnesses was best left to cross-examination.  (Ex. II at 13).

During the first trial, petitioner sought to elicit testimony from Dr. Phillip Esplin regarding protocols for the questioning of juvenile victim/witnesses and "the possible coercion of children" and "their suggestibility."  (T1 at 1127).  The prosecutor opposed the admission of expert testimony about the suggestibility of children because that concept was well within the jurors' common knowledge and experience.  (T1 at 1128-29).  Based on questions asked during voir dire (T1 at 47-49), the County Court

---

[31] Petitioner referenced the Eighth Amendment as the constitutional basis for this claim. As discussed below, the right of a criminal defendant to present witnesses is protected by the compulsory process clause of the Sixth Amendment and the Fourteenth Amendment due process clause.  The *pro se* petitioner's claim will be evaluated under the applicable constitutional provisions.

determined that jurors were well aware of the effects of suggestion on children, and the court precluded Dr. Esplin from testifying on that topic.  The court, however, permitted Dr. Esplin to testify about child sexual abuse accommodation syndrome. (T1 at 1136-37).

On direct appeal, petitioner raised several related claims regarding the expert testimony allowed at the first trial.  Appellate counsel focused on petitioner's objections to the testimony of the People's witness, Dr. Treacy.  (Ex. KK at 52-62). Although petitioner argued that the trial judge also erred in denying the defense a taint hearing or allowing the expert testimony of Dr. Esplin on the suggestibility of juvenile victim/witnesses, the issue was not presented as a federal constitutional claim, under the Sixth and Fourteenth Amendments, or otherwise.  (Ex. KK at 62-65).

## 2. Exhaustion/Procedural Bar

Respondent argues that any constitutional claim raised in the first habeas petition regarding the exclusion of expert testimony was not properly exhausted in state court.  "A habeas petitioner has a number of ways to fairly present a claim in state court without citing 'chapter and verse' of the Constitution, including '(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.'"  *Hernandez v. Conway*, 485 F. Supp. 2d 266, 273 (W.D.N.Y. 2007) (quoting *Daye v. Attorney General*, 696 F.2d 186, 194 (2d

Cir.1982)).

In his direct appeal challenging the trial court's rulings regarding the taint hearing and the proffered defense expert, petitioner did not reference any federal statutory or constitutional provision or any cases referencing such provisions. Because issues relating to the admissibility of expert testimony may be decided on state-law evidentiary grounds, a claim regarding improper exclusion of expert testimony does not necessarily implicate federal constitutional issues. *See, e.g., People v. Kanani*, 272 A.D.2d 186, 187 709 N.Y.S.2d 505 (1st Dep't 2000) (upholding a lower court decision to exclude expert testimony under the applicable *Frye* standards[32] and finding, to the extent that defendant was raising a constitutional claim on appeal, such claim was unpreserved ). Hence, it appears that petitioner's constitutional habeas claim was not properly exhausted.

If petitioner were permitted to return to state court to try to exhaust this constitutional claim with a third section 440.10 motion, it would be procedurally barred because the claim could have been raised on direct appeal, but was not. N.Y. CRIM. PROC. LAW § 440.10(2)(c) (requiring dismissal of a motion to vacate "when the defendant failed to raise such ground or issue on appeal perfected despite having the opportunity to do so.") "'[A] federal habeas court need not require that a federal claim be presented to the state court if it is clear that the state court would hold the claim procedurally barred.'" *Grey v. Hoke*, 933 F.2d at 120 (quoting *Harris v. Reed*, 489

---

[32] New York State uses the test articulated in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923) to determine the reliability of scientific evidence.

U.S. 255, 263 n.9 (1989)).

Under New York law, "it is well-settled . . . that where the record is sufficient to allow appellate review of a claim, the failure to raise that claim on direct appeal precludes subsequent collateral review of that claim." *Louis v. Fischer*, 04 Civ. 2887, 2007 WL 4198255, at *21 (S.D.N.Y. June 25, 2007); *Brown v. Perlman*, 07 Civ. 8672, 2008 WL 2009220, at *28 n.56 (S.D.N.Y. May 8, 2008) (collecting cases). Federal courts in the Second Circuit have found that § 440.10(2)(c) is an adequate and independent procedural bar for the purposes of federal habeas review and that its application as a procedural bar is not exorbitant based on the *Cotto* factors. *See, e.g., Smith v. Artus*, No. 03 Civ. 6982, 2004 WL 789769, at *15-16 (S.D.N.Y. Apr. 14, 2004); *Cruz v. Berbary*, 456 F. Supp. 2d 410, 418-20 (W.D.N.Y. 2006).

The petition does not establish cause[33] for the procedural default of the constitutional claim relating to the exclusion of proffered expert testimony or

---

[33] In his section 440.10 motions, petitioner alleged that his appellate lawyers were ineffective for failing to assert that trial counsel–a different lawyer–was ineffective. (Ex. L ¶ 110, Ex. W). However, petitioner did not assert that appellate counsel was ineffective for failing to raise any other claims on appeal. Moreover, petitioner has failed properly to exhaust, in state court, his claim that appellate counsel was ineffective. Under New York law, a common law writ of error *coram nobis*, filed in the appellate court, is the proper vehicle for bringing a claim of ineffective assistance of appellate counsel. *People v. Bachert*, 69 N.Y.2d 593, 598, 516 N.Y.S.2d 623, 626 (N.Y. 1987); *Turner v. Miller*, 124 Fed. Appx. 682, 683-684, 2005 WL 481694 (2d Cir. 2005). Although petitioner mentioned the issue of ineffective assistance of appellate counsel in his motions to vacate under N.Y. Crim. Proc. Law § 440.10, he did not raise the issue in the appropriate common law writ, and thus failed properly to exhaust his state remedies for this claim. *See, e.g., Dumas v. Kelly*, 105 F. Supp. 2d 66, 74 (E.D.N.Y. 2000); *Bentley v. Scully*, 91 CIV. 1868, 1991 WL 183357, at *5 (S.D.N.Y. Sept. 11, 1991). Accordingly, any claim regarding his appellate counsel could not provide cause for his failure to raise any issue on appeal. *Taylor v. Poole*, No. 07 Civ. 6318, 2009 WL 2634724, at *16-17 (S.D.N.Y. August 27, 2009) (citing *Murray v. Carrier*, 477 U.S. 478, 489 (1986)); *Holland v. Irvin*, 45 Fed. Appx. at 19-20.

prejudice.  As discussed above, petitioner has not adduced any new evidence establishing his actual innocence, and thus has not demonstrated that the failure to review this habeas claim will result in a fundamental miscarriage of justice.  Thus, petitioner is not entitled to federal habeas review of his claims relating to the expert testimony at the first trial.[34]

### C.  Challenges to the Indictment (First Trial)

Petitioner contends that the three counts for which he was convicted at the first trial, were constitutionally defective because they were overly broad and unduly vague.  He argues that the charges did not delineate the particular time frame when the crimes occurred, or specify the particular conduct that was illegal.  Petitioner also claims that the first degree sexual abuse count was duplicitous.  The claim concerning the sufficiency of the indictment is not cognizable on habeas review, and fails on the merits.  The duplicity claim is procedurally barred, and, in any event, is meritless.

---

[34] Even if the petitioner's claim regarding the exclusion of proffered expert testimony was not procedurally barred, it would fail on the merits.  In rejecting the petitioner's challenge to the exclusion of this expert testimony, the Appellate Division held that "Defendant's attempt to show that this issue was beyond the ken of jurors or that these victims had been subjected to undue suggestion or coercion was speculative, and the defense had a full opportunity to address this allegation on cross-examination of the victims, defendant's children and the police investigators." *People v. Weber*, 25 A.D.3d at 923.  In *Washington v. Schriver*, the Second Circuit held that the exclusion of expert testimony about the susceptibility of juvenile witnesses to suggestive interview techniques did not rise to the level of a constitutional violation when defense counsel was able to present the issue to the jury in other ways, given the fact that the fact that young children can be suggestible is "'not beyond the knowledge of the jurors.'"  *Washington v. Schriver*, 255 F.3d 45, 60 (2d Cir. 2001) (citation omitted).  Similarly, petitioner's claim based on the failure of the trial court to conduct a "taint" hearing with respect to the juvenile victim/ witnesses does not constitute a cognizable federal due process claim.  *See, e.g., Nickel v. Ercole*, 9:06-CV-390 (LEK/RFT), 2009 WL 1606092, at *4-5 (N.D.N.Y. May 11, 2009) (finding no due process right to a pre-trial hearing to determine whether an interview of a child was unduly suggestive).

### 1.     Relevant Facts and Procedural History

The Sexual Abuse in the First Degree charge alleged that "on or about the Summer of 1996 . . . [petitioner] subjected another person [MED] to sexual contact and the other person was less than eleven years old" by "touching the child's vagina with his hand and/or finger(s)."  (Indictment No. 01-1015, Ex. HH, Count One).  The Course of Sexual Conduct against a Child in the Second Degree charge stated that between "on or about June of 1998, through on or about September of 1998, . . ., [petitioner] engaged in two or more acts of sexual conduct with a child less than eleven years old" by "touching the child's vagina with his hand and/or finger(s).  (Ex. HH, Count Six ).  The Endangering the Welfare of a Child charge alleged that "on or about April 1999 through June on or about June 2000, on numerous occasions, at [petitioner's residence] and in the vicinity of that location . . . [petitioner] acted in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old" and that during this time period, petitioner "touch[ed] the child's vagina and/or buttocks and/or breasts with his hand(s) and/or finger(s)."  (Ex. HH, Count 8).

### 2.     The Specificity of the Charges

A defect in a state indictment can form the basis for federal habeas relief only if the indictment falls below basic constitutional standards.  *See, e.g., Carroll v. Hoke*, 695 F. Supp. 1435, 1438 (E.D.N.Y.1988), *aff'd*, 880 F.2d 1318 (2d Cir.1989).  An indictment passes constitutional muster if "'it charges a crime [1] with sufficient precision to inform the defendant of the charges he must meet and [2] with enough

detail that he may plead double jeopardy in a future prosecution based on the same set of events.'" *De Vonish v. Keane*, 19 F.3d 107, 108 (2d Cir.1994) (quoting *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir.1992)). *See also Russell v. United States*, 369 U.S. 749 (1962); *Hamling v. United States*, 418 U.S. 87, 117 (1974). Here, petitioner does not claim that he faced the possibility of being subject to double jeopardy based on alleged vagueness in the indictment. Hence, the only issue is whether the indictment informed petitioner "in general terms, of the time, place and essential elements of the alleged crime." *Carroll v. Hoke*, 695 F. Supp. at 1438; *United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir.1975) .

The Appellate Division rejected petitioner's constitutional and other challenges to the indictment in connection with his direct appeal following the first trial. With respect to the first degree sexual abuse charge, the Appellate Division noted that time was not an essential element of the crime. The court found that, in light of all the circumstances of the case, including the fact the victim was eight years old at the time of the conduct, the time period "the summer of 1996" was reasonably specific for the commission of the criminal act. The appellate court noted that the course-of-sexual-conduct and child endangerment charges were both continuing crimes, and held that the time periods alleged for these counts were sufficient to allow petitioner to prepare a defense. *People v. Weber*, 25 A.D.3d at 922-923.

The Appellate Division's conclusion that the time period alleged for the charges involved in the first trial were not unconstitutionally broad or vague was not contrary to, or an unreasonable application of the applicable Supreme Court precedent. Many

40

federal courts have found that fairly large windows of time, in the context of child sexual abuse charges, do not conflict with constitutional notice requirements.  *See, e.g.*, *Parks v. Hargett*, 188 F.3d 519 (Table), No. 98-7068, 1999 WL 157431, at *4 (10th Cir. 1999) (denying constitutional habeas challenge to charge of molestation for six-year-old victim covering a 17-month period); *Fawcett v. Bablitch*, 962 F .2d 617, 618-19 (7th Cir.1992) (information alleging unlawful sexual contact with a ten-year-old over a six-month period provided constitutionally sufficient notice to defend the charge); *Madden v. Tate*, 830 F.2d 194 (table), 1987 WL 44909, at *1-3 (6th Cir. 1987) (charge of sexual conduct with a child under 13-years-old, covering a six-month period did not violate petitioner's due process rights).

### 3.   Duplicity

The Appellate Division found that petitioner failed to preserve his contention that the count charging Sexual Abuse in the First Degree charge was duplicitous under  N.Y. CRIM. PROC. LAW § 200.30, by either moving to dismiss that charge before trial or at the time of the victim's trial testimony.  *People v. Weber*, 25 A.D.3d at 922 (citing N.Y. CRIM. PROC. LAW § 470.05).  Section 470.05 is a firmly established and regularly-followed procedural rule and it application to bar the duplicity claim in this case would not be "exorbitant."  *See Garvey v. Duncan*, 485 F.3d at 717-20; *People v. Fisher*, 223 A.D.2d 493, 494, 637 N.Y.S.2d 382 (1st Dep't 1996) (claim that charges in indictment are duplicitious unpreserved where not raised before the trial court);

*People v Anders*, 192 A.D.2d 392, 393, 597 N.Y.S.2d 590 (1st Dep't 1993).[35]

To overcome this procedural bar and obtain federal review of his claims, petitioner must demonstrate either: (1) cause for the default and prejudice resulting from the alleged constitutional error; or (2) that the failure to consider the federal claim will result in a fundamental miscarriage of justice--*i.e.*, the conviction of someone who is actually innocent. *Coleman v. Thompson*, 501 U.S. at 750. Petitioner does not establish cause for the procedural default on the duplicity claim.[36] The

---

[35] The Appellate Division, in the alternative, persuasively explained why the first degree sexual abuse charge in this case was not, in fact, duplicitous. *People v. Weber*, 25 A.D.3d at 922. However, "if a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative." *Thagard v. Connell*, 07-CV-6254, 2010 WL 986490, at *2 (W.D.N.Y. Mar. 17, 2010) (citing *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision)).

[36] In his section 440.10 motions, petitioner made conclusory allegations that his trial counsel was ineffective for failing to make appropriate objections and arguments below. (Ex. L ¶ 109). As noted above, petitioner cannot rely on ineffective assistance of counsel as cause for a procedural default if the ineffective assistance claim is not exhausted below or is, itself, procedurally defaulted. *Holland v. Irvin*, 45 Fed. Appx. at 19-20. As discussed above, Judge McGrath procedurally defaulted petitioner's claim of ineffectiveness of trial counsel in connection with the second trial. (Ex. Q). It is unclear whether, in addressing petitioner's second section 440.10 motion, whether Justice Teresi found the claim of ineffective assistance of counsel at the first trial procedurally barred, or if he only rejected that conclusory claim on the merits. (Ex. AA at 2, 5). In any event, despite the fact that trial counsel did not preserve the duplicity argument below, the Appellate Division properly rejected the merits of the duplicity claim, in the alternative. Therefor, petitioner was not prejudiced by counsel's failure to raise the duplicity argument at trial and has no viable claim of ineffective assistance on which he can try to establish cause for the procedural default. *See Gonzalez v. Cunningham*, 670 F. Supp. 2d 254, 263-264 (S.D.N.Y. 2009) (where the Appellate Division considered and correctly denied the merits of a challenge to a jury charge even though trial counsel did not preserve an objection below, trial counsel was not deficient for failing to preserve the objection, and his alleged ineffectiveness did not provide cause for the procedural default); *Bierenbaum v. Graham*, 08-1375-pr, __ F.3d __, 2010 WL 2036951, at * 19 (2d Cir. May 25, 2010) (given that the Appellate Division reviewed the claim that the evidence was legally insufficient in a particular respect, he cannot claim that counsel was ineffective in failing to preserve the issue for appeal).

Appellate Division correctly determined, in the alternative, that the duplicity claim was without merit, *People v. Weber*, 25 A.D.3d at 922, so petitioner cannot establish any prejudice relating to the procedural bar of that claim.  Petitioner has clearly not established his actual innocence.

### D.    Claim of Coercion of the Jury (First Trial)

Petitioner claims that the judge at his first trial "pressured the jury into conforming to a unanimous verdict by keeping them in deliberations spanning a three day period from 8:30 a.m. until 11:30 p.m. [sic]"[37]  (Dkt. No. 1, Ground Four).  The basis for this ground for the first petition is somewhat unclear.[38]   To liberally construe the *pro se* petition, this court will examine, not only the duration of the deliberations, but also the judge's instructions regarding deliberations at the first trial–which petitioner did not specifically mention in paragraph 12. D. of his petition, but did reference elsewhere, in an attachment to paragraph 9., and did raise, unsuccessfully, in his direct appeal.  Petitioner's claims regarding the jury deliberations are either non-cognizable or were decided by the state appellate court in a manner not contrary to

---

[37] As noted above, the jury actually deliberated approximately 25 hours over two days. (T1 at 1880, 1896, 1897, 1916).

[38] Petitioner seems to include, in this ground, the claim that the jury could not have unanimously agreed to a particular act constituting first-degree sexual abuse because that count was duplicitous.  That issue is addressed above, along with other alleged deficiencies in the indictment which are raised both in the third and fourth grounds of the petition in No. 09-CV-174 (Dkt. No. 1).  As noted above, the Appellate Division correctly found that the first-degree sexual abuse count charged a single criminal act during the summer of 1996, and the victim's trial testimony regarding that summer did **not** make it "virtually impossible to determine the particular act of . . . sexual abuse as to which the jury reached a unanimous verdict."  *People v. Weber*, 25 A.D.3d at 922.

applicable Supreme Court authority.

### 1.    Relevant Facts and Procedural History

On May 14, 2002, following summations, Justice Teresi charged the jury in petitioner's first trial.  He gave the following instructions regarding the role of the jury:

> When you retire to the jury room, every effort should be made to harmonize the various views, to the end that you will make every endeavor to come to an agreement, which agreement will speak the truth. . . .

> No juror has the right to erect an arbitrary standard and refuse to discuss the evidence or to close his or her mind in judgment to the reasons advanced by his or her fellow jurors.  You should always be open to reason.  But a juror has the right, if the juror believes that that juror is right and is unconvinced by the arguments or reasons of others, to stand by his or her opinion.  The juror should, however, make every effort to blend his or her judgment with that of the others insofar as justice is done to the interests of the state and the defendant at bar.

(T1 at 1865-67).  The defense did not object to the court's instructions.  (T1 at 1871).[39]

The jury began its deliberations at 1:15 p.m. on May 14th.  (T1 at 1880). Throughout the afternoon and evening, the jury requested the read-back of several witnesses' testimony (T1 at 1881-82, 1884) and certain substantive legal instructions

---

[39] Such pre-deliberation "*Allen*"-like charges are proper under New York and federal constitutional law. (An *Allen* charge typically means a supplementary jury charge to encourage a unanimous verdict in the face of an apparent deadlock.)  *See, e.g., People v. Bowen*, 134 A.D.2d 356, 520 N.Y.S.2d 834 (2d Dept. 1987) (pre-deliberation instruction that the jurors should listen to each others' argument with an open mind was entirely appropriate); *People v. Gonzalez*, 262 A.D.2d, 694 N.Y.S.2d 3 (1st Dept. 1999) (pre-deliberation instructions which addressed the general nature of deliberations and encouraged jurors to discuss and share their views was proper, even though court did not add that each juror was to maintain conscientiously held beliefs); *Johnson v. Poole*, 02 Civ. 5349, 2003 WL 118505, at *3-4 (S.D.N.Y. Jan. 14, 2003) (denying habeas relief based on claim that pre-deliberation *Allen*-like charge violated petitioner's due process rights)  (citing, *inter alia*, *United States v. Malizia*, 503 F.2d 578, 583 (2d Cir. 1974) (pre-deliberation Allen-like charge was not coercive).

(T1 at 1884-85).  The jury had a dinner break (T1 at 1883) and retired to a hotel for the night at about 11:00 p.m.  (T1 at 1894).

The jury began its second and final day of deliberations at about 8:50 a.m. on May 15, 2002.  (T1 at 1897).  Throughout the day and evening, the jury requested, and was provided with, more read-backs of testimony and legal instructions.  (T1 at 1897-98, 1900, 1905-06, 1908-1909, 1913).  At about noon, the jury asked the trial judge to reread the portion of the charge "'regarding how the jury is to reach consensus, including any portion referring to the blending of the jury's opinions.'" The court repeated the requested instructions, including the portions quoted above. (T1 at 1898-1900).  The defendant had no objections to the charge.  (T1 at 1900).  At about 7:40 p.m., the jury asked the court to "'[d]efine reasonable doubt, including the portion on blending."  (T1 at 1909).  Justice Teresi repeated his reasonable doubt charge and again gave the requested instruction quoted above.  (T1 at 1910-12). Defense counsel had no objections or requests regarding the instructions.  (T1 at 1912-13).  At about 10:30 p.m., the jury asked if its verdict had to be unanimous, and the court replied "yes."  (T1 at 1914).  At about 11:30 p.m., when the judge asked a court officer to bring the jury out, the jury told the court officer that they wanted a couple of more minutes to deliberate and fill out the verdict sheet.  (T1 at 1915-16).  At 11:45 p.m., the jury returned its spit verdict.  (T1 at 1917-20).

## 2.    Exhaustion/Procedural Bar

The respondent addressed only the explicit arguments set forth in paragraph 12. D.  the petition relating to the duration of  jury deliberations, and argued that this

claim was not exhausted and was procedurally barred.  However, petitioner's direct appeal challenged the legal instructions regarding deliberations given by the judge at the first trial, citing state cases which relied on *Allen v. United States*, 164 U.S. 492 (1986).  (Ex. KK at 50) (citing, *inter alia*, *People v. Cowen*, 249 A.D.2d 560, 672 N.Y.S.2d 138 (2d Dep't 1998)).  "While the reasoning in the [*Allen*] case . . . rests on the supervisory power of the federal courts, the issue of jury coercion is of federal constitutional dimension."  *See, e.g., Campos v. Portuondo*, 193 F. Supp. 2d 735, 745 (S.D.N.Y. 2002) (citing *Lowenfield v. Phelps*, 484 U.S. 231, 240-41(1988) (reviewing jury charge in state habeas petition for "constitutional" error)).  Petitioner's appellate lawyer may not have addressed the issue of the circumstances and duration of the jury deliberations in constitutional terms,[40] but the context in which an *Allen* charge is given is important in examining whether it was coercive.  *Id.* at 748 (citing *Lowenfield*, 484 U.S. at 237).  Accordingly, this court will address the duration of the deliberations as relevant "context" in the determination of whether the judge unconstitutionally attempted to coerce a unanimous verdict from the jury, and not treat that issue as unexhausted or procedurally barred.

### 3.    Review of the Merits

The Appellate Division did not directly discuss the petitioner's arguments regarding the purported coercion of the jury during the first trial, but, at the end of the opinion, denied all remaining claims as not "meritorious."  *People v. Weber*, 25

---

[40] Petitioner's appellate brief did object to the schedule and course of the deliberations as "coercive," and arguably invoked relevant constitutional issues.

A.D.3d at 924.  The AEDPA's deferential standard of review applies to the state court's implicit decision on the petitioner's *Allen*/coercion claim.  *See, e.g, Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001) (the AEDPA standard applies regardless of whether the state court has even discussed the federal claim or any federal law in an opinion adjudicating the state law conviction).  This court concludes that the state court's implicit rejection of this claim was not contrary to or an unreasonable application of *Allen* and related Supreme Court precedent.

The quoted instructions, provided both before and during deliberations, were not improperly "coercive," in that they did not tend to pressure undecided jurors into reaching a verdict by "abandoning without reason conscientiously held doubts." *United States v. Ruggiero*, 928 F.2d 1289, 1299 (2d Cir. 1991).  The court's statement that, if a juror was unconvinced by the arguments or reasoning of others, the juror had "the right" "to stand by his or her opinion," adequately conveyed that jurors were not to abandon conscientiously-held convictions.

Pre-deliberation instructions about the nature of process are less likely to be coercive than supplemental charges given in response to an apparent jury deadlock. *See Johnson v. Poole*, 2003 WL 118505, at *3.  While the initial instructions regarding the deliberation process in this case were repeated twice after the jury was given the case, the court did so in response to unsolicited requests from the jury, not *sua sponte*, in an effort to address an impasse or deadlock.  *See, e.g., United States v. Ruggiero*, 928 F.2d at 1299 (suggesting that, when *Allen* charge was not in response to a report of a deadlock, it is less likely to be coercive).  Under all the circumstances of the case,

47

the court's instructions to the jury were not unconstitutionally coercive.  *See, e.g., Campos v. Portuondo*, 193 F. Supp. 2d at 746-49 (state court's finding, that delivery of three separate *Allen* charges during deliberations was not coercive, was not an unreasonable application of Supreme Court precedent) (citing, *inter alia*, *United States v. Ailsworth*, 138 F.3d 843, 851-52 (10th Cir. 1998) (finding no error in the delivery of an *Allen*-like charge once before deliberations and twice after an apparent deadlock)); *United States v. Fermin*, S3 91 Cr. 634, 1993 WL 17442, at *9 (S.D.N.Y. Jan. 21, 1993), *rev'd on other grounds*, 32 F.3d 674 (2d Cir. 1994) (*Allen*-like charge given before deliberations began, and twice after the jury appeared to be deadlocked, was not coercive ).

The duration and other circumstances of the deliberations at the first trial were not unconstitutionally coercive.  The jury repeatedly asked for read-backs of testimony and instructions, and were clearly working towards a verdict.  They never announced that they were deadlocked or had reached an impasse.  *See, e.g., Underwood v. Kelly*, 692 F. Supp. 146, 151 (E.D.N.Y. 1988) (the length of time of jury deliberations is a matter of trial court discretion and generally cannot constitute coercion); *Graham v. Harris*, 452 F. Supp. 137, 141 n.5 (S.D.N.Y. 1978) (trial judge requiring 24 hours of deliberations over three days without declaring a mistrial was not coercive or an abuse of discretion); *United States v. Burton*, 894 F.2d 188, 191-92 (6th Cir. 1990) (keeping a jury in deliberations until 1:50 a.m. was not an abuse of discretion when they appeared to be making progress and made no complaints of weariness).

### E.    Exclusion of Polygraph Evidence (Second Trial)

Petitioner challenges the exclusion, at his second trial, of evidence from a polygraph examination purportedly finding that he was not deceptive when he denied the criminal accusations.  (09-CV-174 Dkt. No. 1, Ground Two).  Although the petition does not assert this claim in constitutional terms, the prior direct appeal couched it as an alleged violation of petitioner's Sixth Amendment right to call witnesses in his defense.  (Ex. A at 15-16).  We will interpret  the *pro se* petition accordingly, but find that the Appellate Division's rejection of the claim on appeal, *People v. Weber*, 40 A.D.3d at 1267, was not contrary to established Supreme Court authority.

Judge McGrath excluded the polygraph evidence at trial without conducting a *Frye* hearing, finding that the defense had not submitted "any scientific factual allegations showing that the scientific consensus on this point has changed since the evidence had previously been ruled inadmissible under State standards . . . ."  (Ex. II at 2).  The Appellate Division upheld the exclusion of the polygraph evidence without a hearing, stating that petitioner "failed to show that such examinations are scientifically reliable, and New York courts have previously found that the results are not generally accepted as reliable."  *Id*., 40 A.D.3d at 1267 (citing, *inter alia*, *People v. Shedrick*, 66 N.Y.2d 1015, 1018, 499 N.Y.S.2d 388 (N.Y. 1985) ("[t]he reliability of the polygraph has not been demonstrated with sufficient certainty to be admissible in this State.")).

The circumstances under which a trial court's exclusion of expert testimony

constitutes a constitutional violation cognizable as a habeas claim, are limited. *Washington v. Schriver*, 255 F.3d at 56.  Among other things, a petitioner must generally establish that the ruling was erroneous under established rules of procedure and evidence designed to assure both fairness and reliability.  *Hawkins v. Costello*, 460 F.3d 238, 244 (2d Cir. 2005) (in considering whether the exclusion of evidence violated a criminal defendant's right to present a complete defense, we start with the propriety of the trial court's evidentiary ruling).  Petitioner has not established that the polygraph evidence was improperly excluded under New York's *Frye* standards. Even under the more flexible federal *Daubert* standards[41] for the admissibility of "expert" evidence, courts in this circuit continue to exclude polygraph evidence as unreliable.[42]  In any event, the Supreme Court has held that, in light of the continuing lack of consensus regarding the reliability of the polygraph, even a *per se* rule that excludes such evidence without any preliminary hearing does not violate the Fifth or

---

[41] Under the *Frye* test, novel scientific evidence is admissible only if it was based on a method or theory that had gained general acceptance within the field.  *Frye*, 293 F. at 1014.  In *Daubert*, the Supreme Court concluded that *Frye's* rigid standard was inconsistent with the liberal thrust of the Federal Rules of Evidence applicable in federal courts.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).  "*Daubert* granted the trial judge the discretion and authority to determine whether scientific evidence is trustworthy, even if the technique involved had not yet won general scientific acclaim."  *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1042 (2d Cir. 1995).  *Daubert* contemplated a flexible inquiry to assess "the scientific validity and thus the evidentiary relevance and reliability of the principles that underlie a proposed submission." *Daubert*, 509 U.S. at 594-95.

[42] "While the Second Circuit has reserved deciding whether polygraph technology is sufficiently reliable evidence to be admissible under [Fed. R. Evid.] 702 in light of *Daubert*, *see United States v. Messina*, 131 F.3d 36, 42 (2d Cir.1997), both the Second Circuit and its district courts have consistently expressed serious doubt as to the reliability of such evidence, even after *Daubert*."  *U.S. v. Canter*, 338 F. Supp. 2d 460, 463 (S.D.N.Y. 2004) (collecting cases).

Sixth Amendment rights of an accused to present a defense. *United States v. Scheffer*, 523 U.S. 303, 310-11 (1998) (military rule of evidence providing for *per se* exclusion of polygraph evidence in court-martial proceedings was not unconstitutionally arbitrary or disproportionate). Accordingly, the exclusion of the polygraph results offered by petitioner at his second trial provides no basis for habeas relief.

### F.   Limited Use of Prior Convictions for Impeachment (Second Trial)

Petitioner contends that the County Court's *Sandoval* ruling at his second trial denied him a fair trial. (09-CV-221 Dkt. No. 1, Ground Three). The denial of this claim by the Appellate Division on direct appeal was not contrary to or an unreasonable application of the controlling Supreme Court precedent.

The trial judge ruled that the People could not impeach petitioner with his specific prior convictions from the first trial–first degree sexual abuse, second degree course of sexual conduct against a child, and endangering the welfare of a child– because that would be too prejudicial. The court determined that if petitioner testified at his second trial, the People would be permitted to ask him whether or not he was convicted of two Class D felonies and one Class A misdemeanor and was sentenced to prison, without referencing the underlying crimes or the specific sentence. (T2 at 76-77). The petitioner ultimately testified at his second trial, and in accordance with the court's *Sandoval* ruling, the prosecutor only asked petitioner whether he had been convicted of a felony and was serving a sentence. (T2 at 2733-34).

On direct appeal, the petitioner challenged the court's *Sandoval* ruling on both state evidentiary and constitutional ("fair trial") grounds. (Ex. A at 17-18). The

Appellate Division further found that the County Court did not err in "permitting [petitioner] to be cross-examined about the existence of his prior felony conviction, without disclosing the nature of the conviction, the underlying facts or the exact sentence imposed." *People v. Weber*, 40 A.D.3d at 1267-68.

An evidentiary ruling is only redressable in a federal habeas corpus proceeding if there is a showing an error "of constitutional dimension," that deprived him of "fundamental fairness." *Rosario v. Kuhlman*, 839 F.2d 918, 924 (2d Cir. 1988).[43]  In this case, petitioner has not shown an evidentiary error, much less one that deprived him of a fundamentally fair trial.  The trial court did not abuse its discretion under state law in allowing the prosecution to cross-examine petitioner regarding his prior conviction.  The prior commission of "immoral acts" revealed "a willingness or disposition on the part of [petitioner] voluntarily to place the advancement of his individual self-interest ahead of principle or of the interests of society," and, thus, was "relevant to suggest his readiness to do so again on the witness stand." *People v. Sandoval*, 34 N.Y.2d at 377.  However, the court also precluded the prosecutor from probing the most potentially prejudicial aspects of his prior convictions.  *Id.* (cross-examination with respect to crimes or conduct similar to that of which the defendant is presently charged may be highly prejudicial).  In any event, the admission of evidence of petitioner's prior felony conviction was not of such a magnitude so as

---

[43] Because petitioner testified at trial, his *Sandoval* claim is cognizable on habeas review. *Escalona v. Sears*, CV-06-6769, 2008 WL 4534007, at *11 (E.D.N.Y. Oct. 8, 2008) (citing *Luce v. United States*, 469 U.S. 38, 43 (1984) (holding that in order to raise a claim of improper impeachment with a prior conviction, the petitioner must have testified at trial)).

to violate petitioner's constitutional right to a fair trial,[44] particularly in light of the overwhelming evidence of petitioner's guilt at the second trial, discussed further below.  *See, e.g., Escalona v. Sears*, CV-06-6769, 2008 WL 4534007, at *10-11 (E.D.N.Y. Oct. 8, 2008) (rejecting habeas challenge to state court *Sandoval* ruling).

## G.    Sufficiency of the Evidence (Second Trial)

Petitioner challenges the sufficiency of the evidence at his second trial supporting his conviction on 15 counts of second degree sexual abuse or endangering the welfare of a minor.  Given the ample evidence presented, this court finds that the ruling of the Appellate Division finding the evidence sufficient was not contrary to or an unreasonable application of relevant Supreme Court authority.

The Due Process Clause of the Fourteenth Amendment prohibits conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  Consequently, a state prisoner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have

---

[44] Petitioner seems to argue that the fact that the conviction, from the first trial, with which he was impeached in the second trial, both resulted from the same arrest, gives rise to a "fair trial"/due process violation.  (09-CV-221 Dkt. No. 1, Ground Three).  The convictions used for impeachment purposes were distinct offenses involving separate victims, compared to those at issue in the second trial.  The severance of the various charges against petitioner into two indictments for adjudication at two trials was ordered based on petitioner's motion.  (Ex. II at 12).  By the time the second trial started, petitioner had been sentenced on the convictions from the first trial, and they were later upheld on appeal.  Petitioner cites no authority supporting his claim that the mere fact that the impeaching convictions were the result of same arrest, or even the same indictment as the charges involved in the second trial, is relevant in the analysis of whether he received a fair trial.  The court is aware of no such authority and finds this argument without merit.

found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).  In evaluating sufficiency, the evidence must be viewed in the light most favorable to the prosecution.  *Id*. at 318-319.

A habeas court must defer to the assessments of the strength of the evidence and credibility of the witnesses that were made by the jury.  *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996).  Guilt beyond a reasonable doubt may be established entirely by circumstantial evidence, *Id.,* and this evidence must not be reviewed piecemeal, but rather as a whole. *United States v. Khan*, 53 F.3d 507, 513 (2d Cir.1995).  Hence, a petitioner bears a "very heavy burden" in convincing a federal habeas court to grant a petition on the grounds of insufficient evidence.  *Ponnapula v. Spitzer,* 297 F.3d 172, 179 (2d Cir. 2002) (citing *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir.1993)).

Under New York law,[45] a person is guilty of Sexual Abuse in the Second Degree (N.Y. PENAL LAW § 130.60(2)), when he subjects another person to sexual contact and when such other person is less then fourteen years old.  Sexual contact means "any touching of the sexual of intimate parts of a person not married to the actor for the purpose of gratifying sexual desire of either party.  It includes the touching of the actor by the victim as well as the touching of the victim by the actor, whether directly or through clothing.  N.Y. PENAL LAW § 130.00(3).

Under New York law, a person is guilty of Endangering the Welfare of a Child (N.Y. PENAL LAW § 260.10(1)) when "[h]e knowingly acts in a manner likely to be

---

[45] When considering the sufficiency of the evidence of a state conviction, a habeas court must look to state law to determine the elements of the crime. *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002).

injurious to the physical, mental or moral welfare of a child less than seventeen years old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his life or health." Unwanted touching of the private parts can reasonably be considered injurious to the mental or moral welfare of a child. *See People v. Hill*, 34 A.D.3d 1130, 1132, 824 N.Y.S.2d 802 (3d Dep't 2006).

Here, the People presented overwhelming evidence of petitioner's guilt, including the testimony of numerous young girls that petitioner had sexually abused, often in the same manner. MG testified that at SW's birthday party, petitioner twice touched MG's buttocks in his hot tub and pool. (T2 at 1426-27, 1429). AJ testified that, following softball practice, petitioner's massaged AJ's stomach and legs. (T2 at 1394-96). CK testified that petitioner touched her vagina, between two and four times in the pool. (T2 at 842-845). HP testified that petitioner touched HP's vagina in the hot tub more than once. (T2 at 640-642, 647). KB testified that petitioner touched her buttocks and vagina multiple times between January 1999 and the summer of 2000 in the hot tub and in the pool. (T2 at 1521-22, 1523-24, 1527, 1529). CL and AN testified that, following basketball practice, in petitioner's hot tub, petitioner touched their vaginas. (T2 at 915, 922-23,1063). AN testified that in the summer of 2000, while riding an all-terrain vehicle with petitioner, petitioner rubbed AN under her breasts. (T2 at 927-29, 933-34). Finally, KM testified that in June 2000, while KM was using petitioner's hot tub and pool, petitioner put his hand into KM's swim suit and touched her vagina. (T2 at 762-65, 771-772). The various victim-witnesses strongly corroborated each other, although the jury seemed to be able to separate the

evidence relating to the various charges, because it acquitted petitioner on two of the 17 misdemeanor offenses.

The Appellate Division rejected the petitioner's challenge to the sufficiency of the evidence at the second trial.  It concluded that evidence that petitioner acted for the purposes of sexual gratification was readily inferred from his conduct under the circumstances.  *People v. Weber*, 40 A.D.3d at 1268.  The appellate court gave appropriate deference to "the jury's apparent credibility determinations in favor of most of the victims."  *Id.*  When considered in its entirety, the evidence establishing petitioner's guilt was compelling and "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 319.  The Appellate Division's ruling on the sufficiency of the evidence was completely consistent with applicable Supreme Court authority and petitioner is not entitled to habeas relief on this claim.

### H.    Claims of Prosecutorial Misconduct (Both Trials)

Petitioner argues that the convictions resulting from both trials should be overturned because of alleged prosecutorial misconduct.  Petitioner contends, as he did on direct appeal, that the prosecutor at his first trial improperly questioned lay and expert witnesses to highlight the existence of additional victims who were not the subject of the indictment.  (09-CV-174 Dkt. No. 1, Ground Five).  He claims that, at his second trial, the prosecutor improperly bolstered the testimony of the People's witnesses in that she "shook or nodded her head" to provide directions to the child witnesses, and "shook her head and made noises of frustration and disbelief as defense

56

witnesses testified." (09-CV-221 Dkt. No. 1, Ground Five). These claims are procedurally barred and/or are without merit.

A claim of prosecutorial misconduct warrants habeas corpus relief only where the prosecutor's remarks so infected the trial with unfairness that the resulting conviction is a denial of due process. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). The habeas court must distinguish between "'ordinary trial error of a prosecutor and that sort of egregious misconduct . . . amounting to a denial of constitutional due process.'" *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir.1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). In order to show a constitutional violation, the petitioner must demonstrate that he suffered substantial prejudice from the prosecutor's remarks. *Bradley v. Meachum*, 918 F.2d 338, 343 (2d Cir.1990). Three factors are considered in determining whether a prosecutor's summation created "substantial prejudice": the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements. *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir.1998).

### 1.    Exhaustion/Procedural Bar

The respondent argues that petitioner did not exhaust his claim of prosecutorial misconduct from the first trial because he did not raise it on direct appeal in federal constitutional terms. However, this claim was exhausted because it was presented on direct appeal as "prosecutorial misconduct" depriving petitioner of a "fair trial." (KK at 65-69). *See Garofolo v. Coomb*, 804 F.2d 201, 205, 206 (2d Cir. 1986) (the claim of "prosecutorial misconduct" involving the prosecutor's summation and cross-

examination of a defense witness, "had sufficiently familiar federal constitutional implications to be within the mainstream of constitutional litigation"); *Walker v. Bennett*, 262 F. Supp. 2d 25, 33 (W.D.N.Y.2003) (W.D.N.Y.2003) (finding that, although petitioner couched his prosecutorial misconduct claim only in terms of state law on direct appeal, allegations that he was denied a fair trial due to prosecutor's prejudicial statements in summation called to mind constitutional issues of due process).

Petitioner's particular claim of prosecutorial misconduct at the second trial–based on the prosecutor's purported non-verbal communications to the jury, bolstering the People's witnesses and impugning the defense witnesses–was not raised on direct appeal in any form.[46]  Petitioner's section 440.10 motion (Ex. L) alleged in conclusory terms that the prosecution "improperly bolstered the People's witnesses' testimony by virtue of gestures and conduct not appearing on the record."  However the motion provided no factual support for the allegation, did not characterize the allegation as one of "prosecutorial misconduct," and did not cite any supporting legal authority or otherwise identify this as a federal constitutional claim. Not surprisingly, Judge McGrath did not even address this vague and unsupported argument in his decision denying the motion.  (Ex. Q).  Thus, based on the authority cited above, the habeas claim of prosecutorial misconduct in the second trial was not properly exhausted in state court.

---

[46] The second appeal raised issues of alleged prosecutorial misconduct relating only to the Assistant District Attorney's remarks during summation.  (Ex. A at 24).

If the petitioner attempted to return to state court to raise the additional claim of prosecutorial misconduct in another section 440.10 motion, he would undoubtedly be procedurally barred, under N.Y. CRIM. PROC. LAW § 440.10(2)(c), for his failure to raise the claim on direct appeal or under N.Y. CRIM. PROC. LAW. § 440.10(3)(a) for his failure to develop a record on this issue at trial.[47]  *See* Sections III. B. 2., III. A. 3. above.  Petitioner has not established cause for the procedural default relating this particular claim of prosecutorial misconduct.[48]  As discussed above, petitioner has not adduced any new evidence establishing his actual innocence, and thus has not demonstrated that the failure to review his habeas claim will result in a fundamental miscarriage of justice.  Accordingly, the petitioner is not entitled to federal habeas review of this claim of prosecutorial misconduct at his second trial.

In any event, petitioner's conclusory allegations of prosecutorial misconduct at the second trial do not support a cognizable habeas claim.  He provides no details that

---

[47] Because the denial of an additional motion under §440.10 (3) would not be mandatory, a finding of procedural default is not compelled.  *See, e.g., Affser v. Murray*, 04 CV 2715, 2008 WL 2909367, at *4 (E.D.N.Y. July 28, 2008) (because a state court could, in its discretion, review claims on the merits under § 440.10(3)(c), despite petitioner's failure to raise them in his previous motions to vacate, these claims are not necessarily defaulted); *Perez v. Perrott*, 9:04-CV-327, 2008 WL 2323360, at *7 (N.D.N.Y. June 2, 2008) (same ruling with respect to discretionary grounds for denial of motion to vacate under § 440.10(3)(b)) (distinguishing *Murden v. Artuz*, 497 F.3d 178, 193 (2d Cir. 2007), *cert. denied sub nom. Murden v. Ercole*, 552 U.S. 1150 (2008)).  However, Judge McGrath denied petitioner's claims regarding the Child Protective Services Report under section 440.10(3)(a).  He would likely do the same if petitioner filed another motion to raise an additional, constitutional prosecutorial misconduct claim, assuming the court accepted petitioner's representation that the claim was based on facts outside the trial record.

[48] As discussed in Sections III. B. 2. and III. A. 3. above, petitioner cannot rely on prior allegations of ineffective assistance of appellate or trial counsel relating to the second trial to establish cause for this procedural default.

would lend any support to his allegations that the prosecutor engaged in non-verbal communication to the jury that would rise to the level of a constitutional violation. *See, e.g., Avincola v. Stinson*, 60 F. Supp. 2d 133, 161 (S.D.N.Y. 1999) (vague claim of improper summation without any specific examples did not state a viable habeas claim for prosecutorial misconduct) (citing, *inter alia*, *United States v. Romano*, 516 F.2d 768, 771 (2d Cir. 1975) (habeas relief properly denied where prosecutorial misconduct claim consisted of only "conclusory allegations")).

## 2.    Review of the Merits of the Claim Relating to the First Trial

Paragraph 12 of the first petition (09-CV-174 Dkt. 1, Ground Five) provides no specifics about the alleged misconduct of the prosecutor at the first trial.  His appellate brief relating to the first trial, the table of contents of which was attached to his petition, did provide some specific examples–purported efforts of the Assistant District Attorney to elicit testimony highlighting the existence of uncharged victims, to offer extraneous and prejudicial expert testimony, and to present duplicitous evidence regarding a first degree sexual abuse count.  (Ex. KK at 66-70).  The decision of the Appellate Division, rejecting these claims of prosecutorial misconduct, was not contrary to, or an unreasonable application of the relevant Supreme Court authority cited above.

### a.    Questioning of Witnesses Regarding Uncharged Victims

In claiming that the prosecutor elicited testimony regarding uncharged victims at the first trial, petitioner is presumably relying on the snippets of testimony set forth in his appellate brief.  (Ex. KK at 66-67 n. 14).  It should be noted that during the

testimony of the People's first witness, Inv. Jensen, the trial court ruled that defense counsel opened the door to questioning about uncharged victims by his cross-examination. (T1 at 382-85). Nonetheless, the trial court thereafter sustained some objections and struck some testimony regarding uncharged victims.

Inv. Komar testified that the police arrested petitioner on a particular date because there were "numerous disclosures of sexual activity." However, that testimony was stricken from the record (T1 at 1043-44) and it is clear from the follow-up questions, the prosecutor's was simply attempting to establish that the police arrested petitioner when they did because of concern that the investigation would be reported in the media before petitioner was in custody. (T1 at 1044).

Det. Zwingelberg was questioned about how he came to contact MED, a victim on charges in the first trial. The Detective testified that he received MED's name from "another child" (T1 at 997) and later, on redirect, from "another child, another victim" (T. 1027). Given defense counsel's clear strategy of attacking the police investigation as biased and coercive (T1 at 289-291), there was nothing improper about asking the investigator how he discovered the primary victim. Defense counsel did not object to the reference to an uncharged "victim" in Det. Zwingelberg's second answer. (T1 at 1027).

Nor was there anything improper about the prosecutor asking Det. Zwingelberg on redirect why he interviewed petitioner's daughter, SW, at her school, which elicited the response that another "victim" had reported that SW may have been abused. (T1 at 1027, 1029-30). During cross-examination, defense counsel opened the door on this

subject by questioning the detective about his motives and techniques in interviewing SW at her school.  (T1 at  1015-17, 1021).  Counsel did not object to the reference to another "victim," (T. 1027), although the trial court struck other parts of certain answers by the detective.  (T. 1029-30).

In cross-examining SW, the prosecutor asked if certain of her friends and acquaintances had been in the Weber's pool and/or hot tub.  (Ex. KK at 66-67 n. 14). From his opening statement (T1 at 293) and cross-examination of the first prosecution witness (T1 at 340-41), defense counsel acknowledged that other girls had spent time in the petitioner's pool and hot tub, so this line of questioning was not improper or prejudicial.  Similar questioning of the petitioner about other girls with whom he interacted in the pool and hot tub did not constitute prosecutorial misconduct, particularly since this subject was first broached on direct examination.  (T1 at 1535, 1616-17).  Defense counsel did not object when the prosecutor asked petitioner whether he had inflated the swim suits of seven of the children in the hot tub.  (T1 at 1645-46).

After eliciting petitioner's involvement in massaging a couple of injured children on his daughter's track team (T1 at 1682), the prosecutor sought to question petitioner about what happened to CN, who was not the subject of the charges at issue. The court sustained defense counsel's objection and the prosecutor did not further pursue this line of questioning.  (T1 at 1683).

The Appellate Division rejected petitioner's claim that the prosecutor denied him a fair trial by repeatedly questioning various witnesses regarding other children to

raise the specter that petitioner abused others.  The Appellate Division noted that the defense did not object to many of the references to other victims at trial, and that the trial court sometimes sustained objections and struck testimony.  The court held that, "[a]lthough there were unnecessary references to other alleged victims, they were brief and general and were not so prejudicial as to constitute prosecutorial misconduct or to deprive defendant of a fair trial."  *People v. Weber*, 25 A.D.3d at 924.  This implicit finding that petitioner's allegations of prosecutorial misconduct did not rise to the level of a federal constitutional violation is completely consistent with relevant Supreme Court authority.

### b.      Other Allegations of Prosecutorial Misconduct

On appeal, petitioner argued that the prosecutor elicited irrelevant and prejudicial testimony from the People's expert, which suggested that petitioner fit the profile of a child sex abuser, and bolstered the victim witnesses by excusing their inability to pin down the dates of certain conduct.  (Ex. KK at 68-69).  The Appellate Division rejected the defense challenge to the expert testimony, holding:

> The expert's testimony remained generalized and stayed within permissible bounds, clearly reflecting that she had not met the victim; she did not attempt to prove that the charged crimes occurred, that the victim's behavior was consistent with sexual abuse or that defendant fit any abuser profile . . . .  Defendant was permitted to exhaustively cross-examine this witness and to submit the testimony of a defense expert who called into doubt much of her testimony, the court provided proper instructions on the limited use of this testimony, and we discern no error.

*People v. Weber*, 25 A.D.3d at 923 (citations omitted).  For the reasons set forth by the state appellate court, the petitioner has not established that the prosecutor's

presentation of expert witness constituted misconduct, or that it resulted in substantial prejudice, as would be required to state a federal constitutional violation.

On appeal, petitioner also argued that the prosecutor committed misconduct by introducing evidence of multiple instances of abuse of MED during 1996, although the first degree sexual abuse charge (count one) supposedly only identified a criminal single act.  The Appellate Division implicitly rejected this argument in denying petitioner's claim that the count was duplicitous:

> . . . Count one facially charged but one act of sexual abuse during [the summer of 1996] . . . and the victim's trial testimony regarding that summer did not make it "virtually impossible to determine the particular act of . . . sexual abuse as to which the jury reached a unanimous verdict." . . .  While the victim testified as background and for context that during the summer of 1996 she was friends with defendant's daughter and went to defendant's house "a lot" to swim and go in the hot tub, the prosecutor's questions regarding the charged incident of sexual abuse were prefaced by directing the victim's "attention to a specific day." Although the victim was unable to recall an exact date, her testimony described a particular instance in which defendant threw her in the pool and touched her vagina. While the victim's testimony also included references to what defendant "would" do, *i.e.*, describing his modus operandi which began that summer, this did not call upon defendant to answer for more than one offense in count one or make it impossible to determine for which act of sexual abuse the jury reached a unanimous verdict.

*People v. Weber*, 25 A.D.3d at 922 (citations omitted).  Petitioner's argument to recast the duplicity argument into one of prosecutorial misconduct fails.  For the reasons articulated by the state appellate court, the prosecutor did not act improperly in eliciting testimony about the background and context of the first degree sexual abuse count.  This conduct certainly did not result in substantial prejudice to petitioner, such that it would give rise to a due process violation.

## I.   Claim of Excessive Sentence (Second Trial)

Petitioner contends that the sentence of fifteen one-year consecutive jail terms for the convictions from his second trial was excessive.  (09-CV-221 Dkt. No. 1, Ground Six).  This claim provides no basis for habeas relief, for the reasons stated below.

Petitioner was convicted of fifteen Class A misdemeanors.  N.Y. PENAL LAW § 70.15 provides for a definite sentence of up to one year of imprisonment for a Class A Misdemeanor.  Under N.Y. PENAL LAW § 70.25, the court was authorized to impose consecutive sentences for petitioner's separate offenses.  In response to a challenge to this sentence on appeal (Ex. A at 25), the Appellate Division found that the challenge to the sentence was "academic."  *People v. Weber*, 40 A.D.3d at 1268-69.  By operation of law, petitioner's definite sentences here merged with, and were satisfied by his service of indeterminate sentences imposed at his trial on the severed charges. *Id.*; N.Y. PENAL LAW §§ 70.30(2)(b), 70.35.

The Second Circuit has consistently held that "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law."  *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992).  *See also Bellavia v. Fogg,* 613 F.2d 369, 373-74, n.7 (2d Cir. 1979) (sentencing is properly the province of the state legislature, and long mandatory sentence imposed pursuant to statute did not constitute cruel and unusual punishment)*; Ewing v. California*, 538 U.S. 11, 25 (2003).  Given the legality of petitioner's sentence under state law, he states no

cognizable constitutional habeas claim.[49]

### J.      Failure to Swear Jurors (Second Trial)

As noted above, petitioner submitted a letter dated March 3, 2009 which was docketed as a supporting affidavit.  (Dkt. No. 5).  The letter purports to document an additional habeas claim, relating to the apparent failure of the court staff to administer an oath to the jurors in the second trial, contrary to N.Y. CRIM. PROC. LAW § 270.15 and *People v. Hoffler*, 53 A.D.3d 166, 860 N.Y.S.2d 266 (3d Dep't 2008).  Petitioner did not seek or receive permission to amend his petition to add this claim, and the respondent has not addressed it; so it need not be considered.

In any event, there is no indication that this claim was exhausted in state court, and it would likely be procedurally barred because no objection was preserved at trial (Dkt. No. 5 at 8).  *See* N.Y. CRIM. PROC. LAW. § 440.10(3)(a).  *Cf. People v. McDade*, 64 A.D.3d 884, 888, 883 N.Y.S.2d 615 (3d Dep't 2009) (finding any argument concerning the oath administered to prospective jurors unpreserved for appellate review under N.Y. CRIM. PROC. LAW § 470.05); *People v. Hampton*, 64 A.D.3d 872, 877, 883 N.Y.S.2d 338 (3d Dep't 2009).  Moreover, this potential state law procedural violation does that suggest a cognizable constitutional habeas claim.  *See, e.g.,*

---

[49] The Eighth Amendment forbids only extreme sentences which are "grossly disproportionate" to the crime of conviction.  *Lockyer v. Andrade*, 538 U.S. 63, 72-73 (2003). "The gross disproportionality principle reserves a constitutional violation for only the extraordinary case."  *Id.* at 77.  Outside of the context of capital punishment, successful challenges to the proportionality of particular sentences under the Eighth Amendment have been "exceedingly rare."  *Rummel v. Estelle*, 445 U.S. 263, 272 (1980).  Particularly given that the sentence from the second trial was merged into the sentence from the first trial, it clearly was not disproportionate under the Eighth Amendment.

66

*Pinkney v. Senkowski*, No. 03 Civ. 4820, 2006 WL 3208595, at * 6 (S.D.N.Y. Nov. 3, 2006) (finding no federal law violation from a failure to administer an oath to jurors, absent evidence that the jury was otherwise improperly selected or biased). *See also U.S. v. Quinones*, 511 F.3d 289, 299, 301 (2d Cir. 2007) ("the Constitution does not dictate a particular voir dire process; it demands only that the process be 'adequate . . . to identify unqualified jurors.') (quoting *Morgan v. Illinois*, 504 U.S. 719, 729 (1992) ("The Constitution . . . does not dictate a catechism for voir dire, but only that the defendant be afforded an impartial jury.")).[50]

## IV.   **Certificate of Appealability**

The court notes that an appeal from a final order in a habeas corpus proceeding under 28 U.S.C. § 2254 may only be taken upon the issuance of a certificate of appealability.  28 U.S.C. § 2253(c)(1)(A).  A certificate of appealability may be issued only if the applicant has made a substantial showing of a denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  *See Miller v. Cockrell*, 537 U.S. 322, 326 (2003). Because this court has found that the claims raised by petitioner in this case do not make a substantial showing of the denial of a constitutional right, the court will recommend denial of a certificate of appealability.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is

---

[50] To the extent *People v. Hoffler*, 53 A.D.3d at 122 cites *Quinones* and *Morgan* to suggest that a mere failure to swear a jury under N.Y. CRIM. PROC. LAW § 270.15 has federal constitutional dimensions, this court questions the Appellate Division's interpretation of those federal cases.

further

     **RECOMMENDED**, that a certificate of appealability be **DENIED**.

     Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

**Dated: July 2, 2010**

Hon. Andrew T. Baxter
U.S. Magistrate Judge

68